D. C. SALISBURY v. WESTERN NORTH CAROLINA RAIL-
ROAD COMPANY.

   *Railroads—Consequential Damages—Party, interest of.*

1. A railroad company, in the repair of its road-bed at a point several miles above the plaintiff's mill, caused large quantities of mud to be washed down into a creek, by the process of sluicing, thereby lessening the volume of water used in operating the plaintiff's mill and causing the damage complained of; *whether* the company is liable in such case for consequential damages growing out of the exercise of a right conferred in its charter— *Quære.* But if the power was exercised recklessly and without a due regard to the interests of others, the company would be liable for the resultant injury.

2. The possession and working of the mill by the plaintiff without interference, after as before his conveyance of the land, (upon which was the mill-site,) to a trustee for the benefit of his wife, afford *prima facie* evidence of such a personal interest in its operations as entitles him to maintain his action for the damages he has himself sustained, notwithstanding the trustee may sue for such damages as may affect the land as an inheritance.

3. This action is not for compensation for land appropriated by the company, but seeks remuneration for a special injury occasioned by an alleged wrongful act.

   (*Meares* v. *Com'rs*, 9 Ired., 73 cited and approved.)

CIVIL ACTION for damages tried at Fall Term, 1884, of BURKE Superior Court, before *Gilmer, J.*

In deference to an intimation of the court that the action could not be maintained, the plaintiff suffered a nonsuit and appealed.

*Messrs. P. J. Sinclair* and *Batchelor & Devereux,* for plaintiff.
*Messrs. D. Schenck* and *Reade, Busbee & Busbee,* for defendant.

SMITH, C. J. The plaintiff was in possession of a mill for grinding wheat and corn, and had been since 1877, when it was rebuilt, operating the same, on Mill creek, the waters of which, raised by means of a dam, were used as a motive force in propelling the machinery.

In 1879 he executed a deed conveying the tract of land whereof the mill site and the area covered by the pond formed part, to one John T. Reid in trust for his wife Julia C., during her life and in remainder for their son, with certain contingent limitations, not needful to be specified, in the present opinion.

In the year 1882, the defendant company in the repair of their road-bed, some several miles above, at a place known as "Mud Cut," by the use of rubber tubes in the process of sluicing, caused large quantities of loose mud to be washed down which passing into the creek were deposited in the pond, lessening the volume of water therein, diminishing its power, and obstructing the operations of the mill and reducing its capacity to grind to a degree affecting its profits.

The engineer in the service of the defendant estimated that five acres, making a half million of cubic yards, had been thus sluiced or carried away by the current of moving water.

To recover compensation for the damage sustained in

running the mill, by reason of the large accumulation of mud in the pond, the present action is brought.

Much evidence was offered to show the necessity of removing the mud and by the process of sluicing, as the only available means of making the transit over that part of the road permanent and safe.

The argument before us entered largely into the question of the defendant's right under the charter to do the work and maintain the road in proper repair, without accountability at the common law for consequential damages growing out of the exercise of the right conferred in the charter. The subject is not free from difficulty, but it is not presented in the appeal, and we do not propose to depart from the settled practice which confines our examination to such matters of exception as appear in the record.

After the conclusion of the testimony and the opposing counsel had been heard, the court intimated that the plaintiff had no such estate or interest in the land as enabled him to maintain the action, and thereupon his counsel submitted to a judgment of nonsuit and appealed.

The only inquiry then before us is as to the sufficiency of the plaintiff's interest or property upon the evidence to sustain his claim for damages resulting from the interruptions in the operations of the mill which he was running.

The very statement of the ruling in this form seems to convey convincing proof that it is erroneous. The possession and working of the mill, continued over a period of several years by the plaintiff without interference from any one, in the same manner after as before his conveyance of the land, afford *prima facie* evidence of a personal and direct interest in its operations, the impediment to which produces a remedial injury. It is but a reasonable inference from the plaintiff's possession and use of the mill, that it was with the assent of the trustee, and (in the absence of evidence of any conditions or terms) on his own account

and for his individual benefit.  If he was a mere servant or managing agent for the owner of the property, some proof of this relation should have been produced, for it cannot be inferred from the mere fact that the title was in another.   Every person conducting a business is presumed to do so on his own responsibility and for his own advantage.

The ruling of the judge assumes that the testimony shall be taken in its aspects most favorable to the plaintiff, and if the jury would be warranted in finding that the plaintiff was operating the mill for himself and receiving the profits, and these have been cut short in consequence of the act of the defendant, we can see no reason why he may not, if any one else can, seek, through an action, compensation for the damages he has himself sustained in conducting his business.

The plaintiff however has not possession alone of the mill, but, the jury may find upon the evidence, a direct and important interest in its successful operations; and certainly this was sufficient to enable him, so far as this matter is concerned, to maintain his action.

But the court may have so adjuged on the ground that compensation is due only to the owner of the property, so that the result would transfer to the company the easement or right to make this disposition of the removed earth. This is a misconception of the nature and purpose of this action.   It does not rest upon the idea of a right acquired by the defendant by payment of compensation to one who thus transfers it, but the damages claimed are the measure of an injury done—remuneration for a special wrongful act and extending no further.

It is not material that the trustee may also sue, for each may obtain redress for the injury to himself, the recovery by the plaintiff for his damages interposing no obstacle to the recovery of such as may affect the land as an inherit-

ance. These demands are several and distinct, and so may be the actions to enforce them.

Again, the complaint charges that the act of the defendant was unlawful and wilful, that is, that the method adopted for the removal of the mud was unnecessary and injurious, and evidence upon this allegation was before the jury. We do not understand the counsel for the defendant to deny, that, if the power conferred in the charter was exercised negligently and without a due regard to the interest of others, and an injury was suffered in consequence, the company would be exposed to an action for redress in some form, it being an underlying condition of the grant, to use the words of PEARSON, J., in *Meares* v. *Commissioners of Wilmington,* 9 Ired., 73, that *"the work is done in a proper manner."* Still more strongly would be the incurred liability for a wilful and reckless act committed in the alleged exercise of the power.

The effect of the action of the court is to withdraw from the consideration of the jury the evidence of the facts upon which the alleged wilful conduct or negligence in the attempted use of the delegated authority, is dependent.

But the pursuit of this inquiry would lead us into a discussion not germane to the appeal, and we will only repeat that upon the evidence it does rot affirmatively appear, that the plaintiff has no such interest in the mill and its working as entitles him to seek redress by action.

The non-suit must be set aside and a *venire de novo* awarded, to which end let this be certified.

Error.                              *Venire de novo.*