C. B. WRIGHT et als. v. THE CITY OF WILMINGTON.

*Municipal Corporations—Liability for Negligence.*

1. A municipal corporation, which has the right under its charter to perform certain work, is not liable for any damages which may accrue to an individual from doing the work, provided it is done with ordinary skill and caution.

2. A municipal corporation, in preparing side drains to its streets for carrying off rain water, is not required to provide against such extraordinary and excessive rains as could not be reasonably foreseen. So, when the plaintiffs sued for damages for flooding their cellar, caused by the gutters not being of sufficient capacity to carry off the water, and it appeared that they had for five years been sufficient, and only failed on this one occasion, it was error in the court below not to submit this view of the case to the jury.

(*Meares* v. *Wilmington*, 9 Ired., 73; *Bunch* v. *Edenton*, 90 N. C., 431; cited and approved).

CIVIL ACTION tried at December Term, 1884, of the Superior Court of NEW HANOVER county, before *Avery, Judge,* and a jury.

Verdict and judgment for the plaintiffs, and appeal by the defendant.

The facts appear in the opinion.

*Mr. C. M. Stedman,* for the plaintiffs.
*Mr. J. D. Bellamy, Jr.,* for the defendant.

SMITH, C. J. The corporate authorities of Wilmington, with a view to the improvement of one of the streets of the city, known as Nutt street, and for the greater convenience of such as should have occasion for its use, caused it to be raised and graded, without, as the plaintiffs allege and the jury find, opening sufficient side gutters or drains to convey away the superabundant waters produced by a heavy rain-fall, and protect the adjoining proprietors from an overflow. The plaintiffs owned and operated a steam mill for grinding grain on one side of the street, which, by the reason of the filling up the street, left the floor of the mill eighteen inches below the level of the middle and highest point in it. In consequence of the want of an adequate channel to carry off the superabundant rain-water that descended in July, 1881, five years after the work done on the street, it overflowed and passed into a room of the mill, wherein was wheat and other grain, doing the damage for which redress is sought in the present action.

It was conceded at the trial that the plaintiffs could have prevented the overflow and consequent injury by erecting a barrier across the two doors of the mill, through which the water entered, at an expense of ten dollars; but such a barrier would have subjected the plaintiffs to serious inconveniences in conveying articles into the mill. If the floor of the lower room had been raised to the street-level, it would not admit of a person standing upright, and the low pitch would have interfered with its use; while if the floor and street were brought to the same level, unless such barrier had also been constructed, the influx of the water would not have been arrested. It was also admitted that a gutter or drain could have been made by the workmen on the street of sufficient capacity to carry off the surface-water after a heavy rain-fall without injury to the mill in its condition when the street was raised. The damages, if any incurred, were, by consent, fixed at $250.

Two issues were submitted to the jury as involving the facts upon which the responsibility of the city for the injury sustained

by the plaintiffs is supposed to depend, to each of which an affirmative response was returned.

(1.) Was there, in 1876, in front of the plaintiff's mill a sewer or drain sufficient to carry off all surface water after a heavy fall of rain, and was said sewer or drain rendered incapable of carrying off the surface water, by want of skill on the part of defendant's servants in grading Nutt street, after a heavy fall of rain?

(2.) Were plaintiffs damaged in July, 1881, by having their mill flooded with surface water after a heavy rain, which said sewer or drain could not carry off by reason of the want of skill in its construction?

The findings of fact contrast the capability of the gutter or drain in the former condition of the street, with the capability of that in its raised condition after the repairs, to convey away without damage to the mill the superabundant water produced by a *heavy rain-fall* and the negligence is imputed in the insufficiency of the latter under such circumstances to prevent the overflow. If the street was so low as to require the raising and rounding of its bed, as must be supposed, to have caused the necessity of the work, and below the level of the ground whereon the mill stood, the street itself would obviously become a drain and secure the mill from damage, while it is manifest the elevation of the street, mostly in the middle, would turn all the descending waters into the side-gutters and require them to be of larger size and capacity to remove the water rapidly, and prevent the accumulation and overflow. This was not therefore necessarily a test of the presence or want of skill in the manner of making the improvement, nor is it made so by introducing the qualifying words "want of skill on the part of the defendant's servants" in grading the street. The facts to which we have adverted are established by the verdict; but whether they show such want of skill or negligence in the constructed work as to impose a liability upon the municipal body, for the remote consequences, is matter of law to be determined by the Court upon the facts so found. Do these facts show negligence? The work was done in 1876

and the injury occurred five years later, during which interme-diate interval, it does not appear that the existing mode of drain-age failed to remove all the water at each rain-fall, with sufficient rapidity to secure the plaintiff's mill from any inflow, however copiously the rain may have descended at any time. Nor is it shown that the plaintiffs, apprehensive of injury from this cause, ever made complaint to the corporate authorities, of the inade-quate provisions for drainage, or took themselves any precautions to guard against the possible results thereof.

It is apparent that the single rain-fall which occasioned the damage must have been unusually abundant, while in the issue it is designated as a "heavy rain," merely, and not to have been anticipated. A heavy rain is not an unusual occurrence, and it is but reasonable to require provision to be made for such. How abundant it was in July, 1881, can only be inferred from it being the only one from which any damage is alleged to have occurred during several years after the work on the street had been done.

The question then is, whether upon the findings that the water had always previously been removed by the gutters in the street, and those in the street after the elevation and grade had proved insufficient on one occasion of a heavy rain-fall to protect the plaintiff's mill from inundation, implies negligence in the work for which the defendant is answerable. We are not prepared to sustain the affirmative of the involved proposition, nor to hold the municipal authorities while exercising their official functions for the public advantage to so rigid a rule of accountability for an individual injury that may have incidentally followed, nor are we disposed to go beyond the ruling made in *Meares* v. *Commissioners of Wilmington*, 9 Ired., 73.

In this case the street was lowered, in doing which the excavations near the plaintiff's wall, left standing after the fire on an adjoining lot, were such as to undermine it and cause it to fall. The negligence imputed was in removing the supporting soil without making some provision in its stead. The authorities bearing upon the subject of municipal responsibility for

injuries occasioned in the performance of public duty under power conferred, were examined in an exhaustive discussion of the late Chief Justice. In answer to the argument against such liability made by distinguished counsel who represented the defendant, the Court declare that this is correct, "*provided the work is done in a proper manner*," and qualifies the general rule thus: "The grant to do the work necessarily implies a condition that the work is done in a *skilful and proper manner* so that if the work be not done with *ordinary skill and caution* the corporation has not acted in pursuance of the power vested in it; its act is not lawful but is wrongful; and the damage sustained by an individual is *damnum et injuria*, for which an action will lie."

The contrary doctrine is laid down by an eminent writer in these words: "When the power is not exceeded, there is no liability to an adjacent owner for grading the whole width and so close to his line as to cause his *earth or fences and other improvements to fall, and the corporation is not bound to furnish supports or build a wall to protect it.* The abutting owner has as against a city no right to the lateral support of the soil of the street, and can acquire none from prescription or lapse of time." 2 *Dill., Mun. Corp.*, (3d Ed.), §991.

In the note, citing the adjudged cases which support the text, reference is made to *Meares* v. *Commissioners, supra*, and the ground upon which the decision rests, of which the author says: "But it seems difficult judicially to sustain this intermediate ground, however just in its results."

The test of corporate liability in such cases is the manner in which the work is done, and it is not incurred when the work is "done with *ordinary skill and caution*," in the words of the Court. The caving in of the walls in that case was the direct and obvious result of the removal of the supporting soil, the danger of which must have been foreseen and should have been provided against. There was clear negligence in this indifference to the plaintiff's interests, and for this the corporation was made liable. We do not propose to depart from this ruling nor impair the force of the decision as a precedent to guide in similar cases.

But the overflow from a heavy rain-fall, by which the plaintiff suffered, may not have been so readily foreseen, and the defective condition in which the street was left to meet an unusual demand for enlarged facilities for the prompt carrying off of the water, was not so obvious, and does not necessarily imply the absence of the "ordinary skill and caution" constituting the negligence essential to responsibility. We have no evidence of the extent of the rain-fall which occasioned the injury, and it may have been so excessive that any reasonable precautions for carrying away the water would not have been adequate at the time.

All that can be required or expected of the corporation, is to cause the streets so to be made, and with sufficient side drains, as to remove, without injury to adjacent lots, such surface-water as from experience and knowledge of the past, may be reasonably anticipated to fall and may be provided for; but the corporation is not required to provide against such extraordinary and excessive rains as could not be reasonably foreseen and provided against.

This ought to be, and in our opinion is, the measure of corporate liability. And so in the recent case of *Bunch* v. *Edenton*, 90 N. C., 431, it is said that "if, in the exercise of discretionary powers, through neglect or want of *proper care and skill* on the part of its agents and workmen, injury is done to any individual in his person or property, an action will lie in favor of the party injured against the corporation for damages for such injury."

The rain-fall in July, 1881, may have been so excessive and unusual as not to imply a want of that reasonable precaution required in guarding against its effects, and the instruction ought to have presented the case in this aspect, with the proper limitations of the rule, and the jury not left to predicate a want of skill and care upon the simple fact of the insufficiency of the drainage, if the abundance of water was beyond all reasonable anticipations based upon full information and experience of former rains. There would be no culpability exposing the corporation to a suit for damages, where it has done all that a prudent and careful

person could be expected to do for his own protection against such an unforeseen contingency.

For these reasons we think the matter should go before another jury, that the law may be properly explained and applied to the facts as developed.

There is error. This will be certified, that the verdict may be set aside and a *venire de novo* awarded:

*Venire de novo.*