## THOMASON v. RAILROAD.

(Filed October 16, 1906).

*Railroads—Liability for Nuisance—Use of Corporate Powers—Damages—Pleadings—Estoppel.*

1. Where a complaint alleges that plaintiffs own a lot on which is located their dwelling, and that defendant owns and operates, pursuant to its charter, a railroad, the right-of-way of which abuts upon plaintiffs' property, and that for the better conducting its business it purchased a lot adjoining plaintiffs', which it permits to be used as a coal and wood yard, and has constructed over said lot a spur-track, a portion of which is a trestle or a coal-chute, ten feet above the ground, pointing directly to plaintiffs' dwelling, extending within five feet of their fence and twenty feet of their sleeping apartment; that the location of the track, its construction and proximity to their dwelling, is *per se* a nuisance, menacing the safety of their persons and property, when used in the ordinary way, and causing noises, dust, smoke and other disagreeable and injurious nuisances, and that the defendant has negligently used the track, specifying instances in which plaintiffs were threatened with injury, and one in which their property sustained physical injury: *Held,* these facts constitute an actionable nuisance.

2. The powers conferred upon a railroad company by its charter must be exercised "in a lawful way," that is, in respect to those who

suffer damage, with due regard for their rights. When exercised in an unreasonable or negligent way, so as to injure others in the enjoyment of their property, the injury is actionable.

3. While for smoke, cinders, etc., emitted by engines in the ordinary operation of the business of a railroad company, no action lies, yet when there is evidence that the engines were used upon a structure and under conditions which the jury have found to be negligent, the damage inflicted by them is proper to be considered by the jury.

4. In an action against a railroad for damages for maintaining a nuisance, an instruction, in regard to the measure of damages, that the jury should consider all of the circumstances, the depreciation in the value of the plaintiffs' home as a dwelling during the three years next preceding the bringing of the action, the inconvenience, discomfiture and unpleasantness sustained, was correct.

5. Where a demurrer to the complaint was sustained and the plaintiff filed an amended complaint which the defendant answered and did not set up the judgment upon the demurrer, and his request to amend was denied, an exception to the Court's refusal to hold that the judgment upon the demurrer was an estoppel, cannot be sustained.

ACTION by Henry Thomason and wife against the Seaboard Air Line Railway Company, heard by *Judge E. B. Jones* and a jury, at the February Term, 1906, of the Superior Court of VANCE.

This action is prosecuted for the purpose of recovering damage alleged to have been sustained by plaintiffs by reason of a nuisance maintained by defendant.

It appears from the record that at the institution of the suit plaintiffs filed a complaint setting forth several causes of action, to which defendant demurred. The demurrer to each cause of action was sustained at October Term, 1905, and leave given plaintiffs to file an amended complaint. A complaint was accordingly filed 1 December, 1905. It does not clearly appear in what respect this complaint differs from the first one, to which a demurrer was sustained. In the last complaint plaintiffs alleged that twenty years prior to the institution of this action they purchased a lot in the town

of Henderson and have used and occupied it as a dwelling-place and residence until the beginning of this action. That said lot was bounded partly by the right-of-way of the Raleigh and Gaston Railroad, upon which it had, and maintained, tracks over which its engines and cars passed, etc. That by consolidation and merger the defendant has succeeded to all of the rights, duties, etc., of the said railroad company. Among many other matters and things not necessary to be noted in this appeal, plaintiffs alleged: That defendant had, since the purchase by plaintiffs of said lot, and its occupation as a residence, purchased a lot in excess of its right-of-way adjoining plaintiffs' lot, upon which it permitted and maintained a coal-yard, and it had "negligently and with wanton indifference to plaintiffs' rights and safety maintained through and over said coal-yard a trestle with a spur railway track thereon, some ten feet above the ground, pointing directly to plaintiffs' sleeping-room, extending within about five feet of plaintiffs' yard fence and within about twenty feet of their sleeping-room; and ran cars and locomotives thereon. On two occasions coal cars have been negligently forced over the end of this spur-track and the trucks with a large portion of the car suspended in and over plaintiffs' said yard and within less than half a car's length of their sleeping-room—so near that if the cars had lost their balance or had been run into by other cars and thrown over endwise they would have crushed into plaintiffs' sleeping-room to the great danger of their lives and property. That on one occasion the car was negligently permitted to remain in such position by the defendant a week or more; the plaintiffs were driven and kept from their usual bedroom by the imminence of the danger which thus threatened them. That they requested the defendant through its agent to remove the car and abate the nuisance, which it wantonly and contemptuously refused to do until they engaged counsel, etc. Defendant continued to use the said spur-track until some time in

March, 1904, when a fast night passenger train, coming into and through the town at a great speed, negligently ran through an open switch, upon this track, wrecked their loco-motives and a number of coaches, together with the trestle upon which said track was laid, and threw a coal car from said track over the intervening space between such track and plaintiffs' yard, partly into said yard and within a few feet of their sleeping-room, crushing their fence, nearly throwing them from their bed by the violence of the concussion, etc. They alleged that such spur-track, together with the negligent manner of its use, was a nuisance, injuring their property, depreciating its value, and otherwise damaging them.

Defendant made a specific denial of the matters alleged, and for further answer said:

"That the alleged damages charged in the complaint, if any, were the result only of the usual and ordinary incidents of operating railroads, which no care, caution or foresight of the defendant could have prevented, and the defendant alleges that it was guilty of no negligence or want of due care in the construction and maintenance of its said railroad spur-tracks, etc.; and for further defense this defendant says that more than twenty years before the commencement of this action, it and its predecessor, the Raleigh and Gaston Railroad Com-pany, erected its said railroad and spur-tracks, and have been in the peaceable and undisturbed possession and maintenance thereof since then up to the bringing of this action, and by said twenty years of quiet, peaceable and undisturbed use of said railroad spur-tracks, rights-of-way, coal and wood yards, it has acquired a prescriptive right to operate and use the same, and this defendant pleads said twenty years' use and prescriptive right in bar of any recovery herein."

Defendant, when the cause was called for trial, demurred *ore tenus* to the several causes of action set forth in the com-plaint. The Court sustained the demurrer as to all of the causes of action, except the fourth, to-wit: "The defendant

demurs to so much of the plaintiffs' complaint as alleges damage by the construction of sidetracks into and for the benefit of said coal and wood yard, for failure to state a cause of action, because the Seaboard Air Line Railway is authorized by law to engage in the business of a common carrier, and in order to properly carry on said business it is its duty to construct sidetracks for the accommodation of the authorized enterprises constructed and operated along its right-of-way, and it is not liable for damage resulting from the lawful performance of such duty." The judgment of his Honor upon the demurrer concludes: "That is to say, that all the grounds of demurrer, as to the different causes of action in said complaint, are sustained, except the cause of action for damages to plaintiffs' fence, and whatever damages the defendant may have caused the plaintiffs by reason of the construction and operation of the spur-track on the lot of land used for a coal and wood yard, other than injuries to fence and plaintiffs' health." To this judgment defendant excepted.

Defendant thereupon asked leave to amend its answer by setting up the judgment of October Term, 1905, sustaining the demurrer to the original complaint as *res judicata* of the plaintiffs' cause of action. Motion denied. Defendant raised the same question by an exception.

The cause went to trial upon the following issues, resulting in a verdict, as set forth: "2. Did the defendant commit and maintain the nuisance complained of? Ans.: Yes. 3. What damage, if any, has plaintiff sustained by reason of the nuisance complained of? Ans.: $450. 4. What damage, if any, has plaintiff sustained by reason of damage to his household and kitchen furniture? Ans.: $50. 5. What damage, if any, has plaintiff sustained by reason of the destruction of his fence? Ans.: $10."

Defendant pleaded the statute of limitations, but no exceptions appear in the record in regard to his Honor's rulings thereon. There was judgment upon the verdict, and defendant appealed.

THOMASON *v.* RAILROAD.

*H. M. Shaw* and *T. M. Pittman* for the plaintiffs.
*Day & Bell, Murray Allen* and *J. H. Bridgers* for the
defendant.

CONNOR, J., after stating the case: It will be convenient
to first dispose of defendant's exception to his Honor's refusal
to sustain the fourth cause of demurrer. This calls into ques-
tion the right of plaintiffs, upon the allegation in the com-
plaint, to proceed with their proof. If this contention be
correct, it becomes unnecessary to examine the other excep-
tions. The question presented by the demurrer is both inter-
esting and important. It has been so frequently and so
thoroughly considered and discussed by courts of the highest
authority that but little is left to be done save to apply well-
settled principles applicable to it. The judgment upon the
other causes of demurrer eliminates, for the purpose of this
appeal, a number of questions and presents the single propo-
sition advanced by the plaintiffs, that, conceding to the
defendant its right "to do a lawful thing in a lawful way,"
they are entitled to recover on the cause of action stated in
the complaint. Freed from all formal or technical verbiage,
the case, developed by the complaint, is simply this: Plain-
tiffs own a lot upon which is located their dwelling in the
town of Henderson. Defendant owns and operates, pursuant
to its charter, a railroad, the right-of-way of which abuts upon
plaintiffs' property. Defendant, for the better conducting
its business of common carrier, purchased a lot adjoining
plaintiffs' which it permits to be used as a coal-yard. For the
delivery of coal and other purposes defendant has constructed
over said lot a spur-track, a portion of which is a trestle or
coal-chute, some ten feet above the ground, pointing directly
to plaintiffs' dwelling, extending within about five feet of
plaintiffs' fence and twenty feet of their sleeping apartment.
   Plaintiffs allege that the location of this track, its construc-
tion and proximity to their dwelling, is *per se* a nuisance,

142—20

menacing the safety of their persons and property, when used in the ordinary way, and causing noises, dust, smoke and other disagreeable and injurious nuisances. They further say that the defendant has negligently used the track, specifying several instances in which they were threatened with injury and one in which their property sustained physical injury and they were compelled to abandon their bedroom by the violent concussion caused by the collision of defendant's trains.

Adopting Blackstone's definition, there can be no doubt that the facts, set forth in the complaint, constitute a private nuisance, "Anything done to the hurt or annoyance of the lands, tenements or hereditaments of another." 16 Am. and Eng. Enc., 682. "An act or use of property, to constitute a nuisance, must violate some legal right, either public or private, and must work some material annoyance, inconvenience or injury, either actual or implied from the invasion of the right." *Ib.*, 686. The defendant says that, conceding the damage done plaintiffs, they have no cause of action, or that the damage done is not an actionable nuisance, for that defendant was acting within its chartered rights, or, as expressed in many of the authorities cited, "doing a lawful act in a lawful way." This contention is based upon the elementary proposition that "no action can be maintained for loss or inconvenience which is the necessary consequence of an authorized thing being done in an authorized manner." Pollock on Torts (7 Ed.), 128.

The principle applied to railroad companies, as *quasi*-public agencies—assimilating them, in this respect, to municipal corporations—has been well stated in an exceedingly able opinion by *Beasley, C. J.,* in *Beseman v. Railroad,* 50 N. J. L., 235: "They are not responsible for those incidental damages that result from the proper exercise of their functions." The principle applied to municipal corporations is recognized by this Court in *Meares v. Wilmington,* 31 N. C., 73. In that

case the municipal authorities, in grading a street, removed the earth to the depth of several feet, causing the plaintiffs' lot adjoining the street to fall, bearing with it a brick wall, to plaintiffs' damage, etc. Defendant contended that by its charter, and ordinance passed pursuant thereto, it was empowered to grade the street, and that by reason thereof it was not liable to plaintiff, whether due caution was used or not. His Honor instructed the jury that the act of defendant was lawful, provided it was done with due caution, etc. From a judgment for plaintiff defendant appealed.

*Pearson, J.,* said: "If the defendants had caused the grading to be done with ordinary skill and caution, and by the erection of a substantial wall as the excavation proceeded had so managed as to prevent any caving in of the plaintiffs' lot, so that the damage, if any, would have resulted, not from a want of ordinary skill and caution, but merely from the fact that, by reason of the grading, the lot was left higher above the level of the street, and so was more difficult of access, and, therefore, less valuable, the case would have presented a very grave question; and we are strongly inclined to think, with his Honor, that the plaintiffs would have been without remedy; for, as it was lawful for the defendants to do the work, *if it was done in a proper manner*, although the plaintiffs were damaged thereby, it would be *damnum absque injuria,* and give no cause of action." The principle announced in this case was approved with much caution in *Wright v. Wilmington,* 92 N. C., 156. This may be regarded as the settled doctrine in this State. *Wolfe v. Pearson,* 114 N. C., 621. In *Salisbury v. Railroad,* 91 N. C., 490, *Smith, C. J.,* says that the question whether the same principle applies to railroads is not presented, and therefore is not "passed upon." He further says: "We do not understand the counsel for the defendant to deny that if the power conferred in the charter was exercised negligently and without a due regard to the interest of others, and an injury was suffered in

consequence, the company would be exposed to an action for redress in some form," citing *Meares v. Wilmington, supra.* While in the very well considered and exhaustive brief of defendant many cases are cited in which railroad companies are given the same immunity from actions for consequential injury to property sustained by the lawful exercise of power as municipal corporations, this Court, in *Staton v. Railroad,* 111 N. C., 278, in an opinion by *Shepherd, C. J.,* denies such immunity. It is there held that the authority granted to a corporation by its charter to construct a railroad does not thereby confer upon it an immunity from liability for damages to others in respect to their adjacent lands, when, under the same circumstances, a private individual would be liable. That case involved the question of the right of an adjacent land-owner to recover damages for flooding his land by the construction of ditches on defendant's right-of-way. It may be noted that such flooding of the lands amounted to a "taking," and comes within the elementary principle that in such cases compensation must be made.

For the purpose of disposing of this appeal it is not necessary to further discuss the question presented in *Staton v. Railroad,* 111 N. C., 278. From either viewpoint the limitation is always annexed, that the right be exercised "in a lawful way," that is, in respect to those who suffer damage, with due care for their rights. When done negligently, and without due regard for such rights, there is *damnum et injuria,* that is, in contemplation of the law *injuria,* which is always actionable. We find the same limitation imposed upon the doctrine in all of the cases, from other jurisdictions, cited in defendant's brief.

In a well-sustained opinion by *Judge Keith* in *Fisher v. Railroad,* 102 Va., 363, he concludes the discussion with this language: "But in order to secure this immunity, the power given by the Legislature must be exercised without negligence, and with judgment and caution. For damage which

could not have been avoided by any reasonable, practicable care on the part of those authorized to exercise the power, there is no right of action; but they must not do needless harm, and, if they do, it is a wrong against which the ordinary remedies are available." Pollock on Torts, 129.

In a case strikingly similar to ours, *Balt. & Pot. Railroad v. Baptist Church,* 108 U. S., 317, it appeared that under the powers conferred upon the defendant to erect such works as it might deem necessary and expedient for the completion and maintenance of its road, it erected in the city of Washington, in close proximity to the defendant Baptist Church, an engine-house, machine shop, etc., and used them in such a way as to disturb the congregation assembled in the church; to interfere with religious exercises therein, break up the Sunday-schools and destroy the value of the building as a place of worship. For the purpose of recovering damages, the church instituted an action. The same defense was relied upon as in this case. *Field, J.,* said: "Plainly the engine-house and repair-shop, as they were used by the railroad company, were a nuisance in every sense of the term. They interfered with the enjoyment of property which was acquired by the plaintiff long before they were built, and was held as a place for religious exercises, * * * that is, a nuisance which annoys and disturbs one in the possession of his property, rendering its ordinary use or occupation physically uncomfortable to him. * * * It is no answer to the action of the plaintiff that the railroad company was authorized by act of Congress to bring its track within the limits of the city of Washington, and to construct such works as were necessary and expedient for the completion and maintenance of its road, and that the engine-house and repair-shop in question were thus necessary and expedient; that they are skilfully constructed. * * * In the first place, the authority of the company to construct such works as it might deem necessary and expedient for the completion and main-

tenance of its road did not authorize it to place them wherever it might think proper in the city, without reference to the property and rights of others. As well might it be contended that the act permitted it to place them immediately in front of the President's house or of the Capitol, or in the most densely populated locality. Indeed, the corporation does assert a right to place its works upon property it may acquire anywhere in the city. Whatever the extent of the authority conferred, it was accompanied with this implied qualification: that the works should not be so placed as by their use to unreasonably. interfere with and disturb the peaceful and comfortable enjoyment of others in their property. Grants of privileges or powers to corporate bodies, like those in question, confer no license to use them in disregard of the private rights of others, and with immunity for their invasion. The great principle of the common law, which is equally the teaching of Christian morality, so to use one's property as not to injure others, forbids any other application or use of the rights and powers conferred. Undoubtedly, a railway over the public highways of the District, including the streets of the city of Washington, may be authorized by Congress, and if, when used with reasonable care, it produces only that incidental inconvenience which unavoidably follows the additional occupation of the streets by its cars with the noises and disturbances necessarily attending their use, no one can complain that he is incommoded. Whatever consequential annoyance may necessarily follow from the running of cars on the road with reasonable care is *damnum absque injuria.* The private inconvenience in such case must be suffered for the public accommodation. But the case at bar is not of that nature. It is a case of the use by the railroad company of its property in such an unreasonable way as to disturb and annoy the plaintiff in the occupation of its church to an extent rendering it uncomfortable as a place of worship."

This case is cited with approval in *Bates v. Holbrook,* 171
N. Y., 460; *Ridge v. Penna. Railroad Co.,* 58 N. J. Eq.,
172, in which the Chancellor says: "Therefore, the right
of this company to use the strip of land upon which the three
tracks are placed   *   *   *   for terminal purposes, does
not include the right to use them for all purposes to which
a terminal yard may be devoted. The company is bound to
take into consideration the environments and adjust its opera-
tions so as to produce the least annoyance to persons and
property in placing the instrument necessary to its business."
In *Willis v. K. & I. Bridge Co.,* 46 S. W., 488, citing the
*Church case,* it is said: "Whenever a railroad company has
been granted authority to use a street, it is accompanied with
an implied qualification that its use shall not unreasonably
interfere with and disturb the peaceful and comfortable en-
joyment of others in their property. Such a grant does not
license the railroad company to use the street in disregard of
the private rights of others, and with immunity for their
invasion."

In *Ch., G. W. Railway Co. v. First Methodist Church,* 102
Fed. Rep., 85, in which it appeared that the company erected
a hydrant in a street opposite the church and built tracks to
it, in the use of which the engines made noises, emitted
smoke, cinders, etc., a right of an action was sustained by
the Court of Appeals. Defendant insists that this appeal is
to be distinguished from the *Baptist Church case* because,
"1. It did not appear that the railroad had the proper legis-
lative authority to construct and use the building complained
of in the place at which it was located, and it appeared
affirmatively that it was at an unreasonable place." It
appeared that the road was, by its charter, empowered to
make and construct all works whatever which might be neces-
sary and expedient in order to the proper completion and
maintenance of its road. The defendant's charter is in sub-
stantially the same language. The location of the road was
expressly permitted and approved by Congress. Conceding

that the location of the spur-track upon the lot purchased by defendant for that purpose was authorized by the charter, the complaint is that the construction of it, the trestle pointing directly to plaintiffs' dwelling and extending to within a few feet of their fence and twenty-seven feet of their dwelling, it would seem that, considering the purpose for which it was built and was to be used, it was at least a menace to plaintiffs' property.

In *Romer v. Railway Co.*, 75 Minn., 211, it is said by the Court that no negligence was imputed to defendant. In *Dolan v. Railroad*, 95 N. W., 385, a recovery was denied for a nuisance in maintaining a stock-yard, because it was not shown that the location was not a reasonably proper one or that the company did not use reasonable diligence in preventing unhealthy conditions. The distinction is apparent. This contention is, we think, met by the language of *Judge Field* above quoted. Conferring the power to erect all structures, buildings, etc., necessary and convenient for its business cannot be construed to empower it to locate and use them as it might think proper without reference to the rights of others. *Terminal Co. v. Jacobs*, 109 Tenn., 727; *Ridge v. Railroad*, 58 N. J. Eq., 172. To give it such a construction would impute to the Legislature a disregard of private rights, trenching closely upon, if not in violation of, constitutional limitations.

In *Railroad v. Meth. Epis. Church, supra,* it is said: "If two private citizens own adjacent lots, one of them cannot establish and maintain on his own lot a nuisance which has the effect of depriving his neighbor of any beneficial use of his lot without making compensation for the injury, and no more can a private corporation erect and maintain a nuisance on its own premises, or in a public street, which has the effect to deprive an adjacent or abutting owner of the beneficial use of his property, without making compensation for the injury." Defendant says that the cases are distinguished in that "the engine-house was a part of the defendant's pri-

vate works, used exclusively for its private business, and bearing no relation to the public." We do not find that the Court so regarded the engine-house; on the contrary, the entire discussion proceeds upon the theory that defendant was acting within its chartered powers, but in violation of the duty imposed to use them in a reasonable manner and with due regard to the rights of others. However this may be, the plaintiffs aver that in the use of the trestle defendant was negligent, specifying several instances in which it is alleged there was gross negligence. In *Dargan v. Waddill,* 31 N. C., 244, holding that a stable in a town was not *per se* a nuisance, *Ruffin, C. J.,* says: "But, on the contrary, if they be so built, so kept, or so used as to destroy the comfort of persons owning and occupying adjoining premises and impair their value as places of habitation, stables do thereby become nuisances." We do not discuss the question whether the rights of the plaintiffs are affected by the fact that the spur-track and trestle were on a lot purchased by defendant for use as a coal-yard as distinguished from a like use of land covered by the right-of-way. Without entering further in this domain, wherein frequent attempts to restate the doctrine has sometimes led to obscurity, we conclude that his Honor correctly overruled the demurrer.

The allegation is specifically made that defendant wantonly and negligently created, maintained, etc., the nuisance, specifying each negligent act. These terms are repeated in respect to each act complained of and permeate the entire complaint in respect to this cause of action. Postponing the consideration of several exceptions to rulings upon the admissibility of testimony, we proceed to examine such as relate to his Honor's instructions.

After stating the contentions of the parties his Honor said: "So then, gentlemen, the question is for you to find, as to whether the defendant in this case committed and maintained, caused and continued a nuisance on the lot adjoining

plaintiffs', not on the right-of-way, but outside of the right-of-way and next to and adjoining the plaintiffs' lot." To this defendant excepted.

We find no error in this. His Honor clearly stated to the jury the limits within which, by the judgment upon the demurrer, he had restricted plaintiffs. His Honor proceeded to instruct the jury: "So, if you find by the greater weight of evidence that the lot occupied and used by the defendant is off its right-of-way and adjoining the plaintiffs' lot; that plaintiffs acquired their lot and erected a dwelling on same before the defendant built the spur on its lot and commenced to use the same as a dwelling; that the end of the spur-track was insecurely built, or not safely constructed; that it extended to within five and a half feet of the plaintiffs' line fence and to within twenty-seven and a half feet of plaintiffs' dwelling and sleeping apartments; that defendant's cars were several times wrecked and dropped over towards the plaintiffs' dwelling, and that by reason of this fact the plaintiffs had reasonable grounds to believe and did believe that they were by reason of the proximity of the track in danger of being hurt; then if you find these facts to be true from the evidence, and by the greater weight of the evidence, the Court charges you the operation of the spur-track by the defendant under these circumstances would create a nuisance on the part of the defendant. And plaintiffs would be entitled to recover if you find this condition existed within three years prior to the bringing of this action."

"And if you shall find from the greater weight of the evidence that the defendant negligently and carelessly permitted its cars to run off of the spur-track and knock down plaintiffs' fence, then the plaintiffs would be entitled to recover of the defendant the damage to the fence caused by reason of the negligence of the defendant in throwing its cars on the fence, if you find that it was negligent."

"If the jury shall find by the greater weight of the evidence that the defendant operated its engines and cars over the spur in a reckless and careless manner, and because of the proximity of the defendant's track to the residence of the plaintiffs it kept the plaintiffs in constant dread and fear; and you shall further find that because of this proximity of defendant's track to plaintiffs' house, and because of the soot, cinders and smoke, the plaintiffs' house was rendered less valuable as a residence, and made the house uncomfortable and disagreeable to its occupants, the plaintiffs, then these facts and circumstances, if proven by the greater weight of evidence, would make the acts of defendant a nuisance."

These instructions, we think, are sustained by the authorities which we have cited in regard to the ruling upon the demurrer. They fairly present to the jury the averments contained in the complaint, upon which there was testimony; in fact, there was no contradictory testimony in respect to the damage sustained by plaintiffs. Several of defendant's witnesses corroborated the plaintiffs' evidence.

His Honor further instructed the jury: "Or, if you shall find from the evidence, and by the greater weight of evidence that the defendant in operating its engines and cars upon the spur-track on the lot adjoining the plaintiffs' lot, and in so doing you find that its engines emitted such smoke, cinders, and threw out such smoke and cinders through the windows and doors of the plaintiffs' house, and injured the plaintiffs' property, their household and kitchen furniture, the plaintiffs would be entitled to recover for damages thus sustained." Defendant insists that in this instruction his Honor eliminated the question of negligence and permitted the plaintiffs to recover damage to their furniture for smoke, cinders, etc., emitted from the engines. The charge must be so read that each portion shall be construed in the light of the whole. While it is true that for smoke, cinders, etc., emitted by engines in the ordinary operation of the business of defend-

ant, no action lies, yet when, as in this appeal, there is evidence that the engines were used upon a structure and under conditions which the jury have found to be negligent, it would seem that the damage inflicted by them is proper to be considered by the jury. The instruction is in accordance with the opinion in the case of *Railroad v. Baptist Church, supra.* The testimony in regard to the damage sustained from this annoyance was clear, and, taken in connection with all the facts in the case, we think it was competent for the jury to consider it in fixing the damage. In regard to the measure of damages, his Honor instructed the jury that they should consider all of the circumstances, the depreciation in value of the plaintiffs' home as a dwelling during the three years next preceding the bringing of the action; the inconvenience, discomfiture and unpleasantness sustained. The instruction in this respect is fully sustained by the authorities. It seems to have been drawn with reference to the language of *Judge Field* in the *Church case.* We find in all that is said in that case authority for the ruling of his Honor. While we have carefully examined a number of cases cited in defendant's brief, we have found no other so nearly analogous to this appeal. While recognizing the general principles governing the liability for railroads to actions for nuisances, it is founded upon sound reason and principles of manifest justice. The exceptions in regard to the admission and rejection of testimony were not pressed in this Court, and we do not find in them any reversible error.

The case was tried upon the theory of a negligent and unreasonable use of the powers conferred upon defendant by its charter, and, as we have seen, the very great weight of authority recognizes this limitation upon the maxim that no action lies for "doing a lawful thing in a lawful way." It is difficult to conceive how the law could be otherwise or how it can be said that to do any act, however lawful, without a due regard to the rights of others to be affected thereby is doing

such act in a "lawful way." While large powers are of necessity granted to railway companies in the construction and operation of the business in which they are engaged and by which, when properly restrained, the public welfare is promoted, it would be contrary to fundamental principles of law and conceptions of natural justice to say that the Legislature will, or can, confer upon any person, either natural or corporate, absolute and uncontrolled power to injure or destroy the property of the citizen without making compensation. No matter how extensive the power conferred, it must not be exercised in an unreasonable or negligent way so as to injure others in their enjoyment of their property. Within this limitation the principle of immunity from liability for "doing a lawful thing in a lawful way" is sound and salutary; without the limitation, it confers arbitrary power to be exercised in an arbitrary manner.

The effect of the judgment upon the demurrer to the first complaint, as an estoppel, is not presented by any pleadings. The defendant answered the amended complaint and did not set up the judgment upon the demurrer. The request to amend was denied. The exception to his Honor's refusal to hold with defendant in that respect cannot be sustained. We find upon an examination of the entire record,

No Error.