## MELVILLE DORSEY v. TOWN OF HENDERSON.

### (Filed 14 October, 1908.)

1. **Cities and Towns—Grading Streets—Damage to Abutting Owner—Liability of City.**

   Revisal, sec. 2930, provides that the commissioners shall keep the streets, etc., of a town in repair, "in such manner and to the extent they deem best, and cause such improvements in the town to be made as may be necessary." Therefore, when the commissioners of a town, in the exercise of these powers, cause in their discretion grading of the streets or sidewalks to be made, whereby the value of plaintiff's property has been decreased, the plaintiff cannot recover of the town therefor, in the absence of statutory provision for compensation, if the commissioners have acted with due care and skill.

2. **Same—Change of Plan—Ratification.**

   When the street commissioners of a town changed the original plans of its civil engineer in regard to grading the streets and sidewalks, and damages are claimed by a property owner on that account, the courts are precluded from inquiring into the advisability of the change, when it appears that the town commissioners have adopted and approved it.

ACTION tried before *Cooke, J.,* and a jury, at May Term, 1908, of VANCE, to recover damages of the defendant for alleged injury to the plaintiff's property, consisting of a building used for stores, situated on Garnett Street, in said town, caused by the grading and lowering of the sidewalk and street in front of the same.

The following issues were submitted to the jury:

1. "Did defendant, in grading and constructing the sidewalk in front of plaintiff's store, grade and construct the same in a negligent, unlawful, wanton or improper manner?" Answer: "Yes."

2. "If yes, what damage is plaintiff entitled to recover?" Answer: "Fifteen hundred dollars."

At the close of the evidence the defendant moved to nonsuit the plaintiff upon the grounds (1) that the defendant had the lawful authority to grade the sidewalk and street in front of plaintiff's property; (2) that there was no evidence that the work was done in a negligent, wanton or improper manner.

The court overruled the motion, and defendant excepted and appealed.

*F. S. Spruill, A. J. Harris, Bennett Perry* and *J. C. Kittrell* for plaintiff.

*T. T. Hicks, A. C. Zollicoffer* and *T. M. Pittman* for defendant.

BROWN, J. The evidence tends to prove that the plaintiff, during the year 1885, erected on Garnett Street, in the town of Henderson, a two-story brick building abutting on the sidewalk. At that time Garnett Street had been opened and, with the sidewalk, was in use by the public. In 1903 the municipal authorities, for the benefit and improvement of the town, inaugurated a scheme for the paving and improvement of the streets and the construction of a sewerage system. They employed a competent engineer, who, with his assistant engineer, drew up and submitted the plans and specifications of the work.

The plans, as originally submitted by the principal engineer, Mr. Ludlow, did not contemplate lowering the grade in front of plaintiff's store, but to obviate the necessity for it by means of a deep curb and a step.

Upon further investigation, consideration and advice, the town authorities decided to grade the sidewalk on Garnett Street on a level incline with the curbing and do away with the step, etc., as originally called for in the Ludlow plans. This necessitated lowering the grade some sixteen inches,

according to plaintiff's evidence, at the door of his store, so as to require the construction of steps from the sidewalk to the door sill, which injures the value of his building as a place of business. The question presented on this appeal, and argued with much learning and ability by counsel on both sides, is the right of a person owning a building abutting on a public street to recover damages for the diminution in the value of his property, caused by the change in the grade of the street, in the absence of any negligence in the construction of the work.

The learned counsel for the plaintiff, Mr. Spruill, in his argument, as well as in the brief, admitted that this question has been "apparently decided" by this Court adversely to the contention of the plaintiff.

The law has been so held by this Court in a number of cases, and in such explicit terms that to adopt the plaintiff's theories would be to overrule a long line of well-established precedents. The question was first considered by this Court in 1848 and exhaustively discussed by *Judge Pearson,* and the conclusion reached that where a municipal corporation has authority to grade its streets it is not liable for consequential damage, unless the work was done in an unskillful and incautious manner. *Meares v. Wilmington,* 31 N. C., 73. This case has been approved and followed in many adjudications of this Court in more recent years. *Salisbury v. Railroad,* 91 N. C., 490; *Wright v. Wilmington,* 92 N. C., 160; *Tate v. Greensboro,* 114 N. C., 397; *Brown v. Electric Company,* 138 N. C., 537; *Jones v. Henderson,* 60 S. E. Rep., 894; *Ward v. Commissioners,* 146 N. C., 538; *Small v. Edenton,* 146 N. C., 527. In *Thomason v. Railroad* the subject is referred to as "the settled doctrine of this State." 142 N. C., 307.

The adjudications of this Court are supported by abundant authority elsewhere. Judge Dillon says: "Authority to establish grades for streets, and to grade them, involves the right

to make changes in the surface of the ground which may injuriously affect the adjacent property owners; but where the power is not exceeded there is no liability, unless created by special constitutional provision or by statute (and then only in the mode and to the extent provided), for the consequences resulting from the powers being exercised and properly carried into execution." 2 Dillon on Mun. Corp., sec. 1040.

The law is summarized in the Encyclopædia as follows: "A change of grade in streets made by a municipality, if made in accordance with statute, is not such an injury to adjoining property as to require compensation to be made to owners, unless there is a statute rendering the municipality liable therefor." 10 Am. and Eng. Enc. of Law (2d Ed.), p. 1124ff, citing cases from England, Supreme Court of the United States and twenty-five States. The same rule of law is recognized and asserted by the Supreme Court of the United States in *Transp. Co. v. Chicago,* 99 U. S., 635; *Smith v. Corp. of Washington,* 20 Howard, 135. The principle upon which such adjudications rest is that in making the improvements the municipality is the agent of the State, and that these agencies authorized by law to make or improve public highways are not answerable for consequential damages, if they act within their jurisdiction and with due care and skill.

The doctrine is almost universally accepted by the State courts of this country. Cooley on Const. Lim., p. 542, and notes.

The decisions in Ohio, so far as we can ascertain, appear to be the solitary exception.

It is the settled doctrine of the English courts since the days of Kenyon and Buller. *Governor and Company of the British Cast Plate Manufacturers v. Meredith,* 4 Durn. and East Term Rep., 794-796; *Sutton v. Clark,* 6 Taun., 28; *Boulton v. Crowther,* 2 Barn. and Cres., 703.

The Supreme Court of the United States, in the above-cited case, refers to this well-settled rule of law in these terms: "The doctrine, however it may at times appear to be at variance with natural justice, rests upon the soundest legal reason. The State holds its highways in trust for the public. Improvements made by its direction or by its authority are its acts, and the ultimate responsibility, of course, should rest upon it. But it is the prerogative of the State to be exempt from coercion by suit, except by its own consent. This prerogative would amount to nothing if it did not protect the agents for improving highways which the State is compelled to employ. The remedy, therefore, for a consequential injury resulting from the State's action through its agents, if there be any, must be that, and that only, which the Legislature shall give. It does not exist at common law. The decisions to which we have referred were made in view of *Magna Charta,* and the restriction to be found in the constitution of every State, that private property shall not be taken for public use without just compensation being made. But acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision. They do not entitle the owner of such property to compensation from the State or its agents, or give him any right of action. This is supported by an immense weight of authority."

It is contended, however, by the plaintiff that the defendant is liable because the street committee changed the Ludlow plan, which contemplated a step, so as to avoid lowering the grade at plantiff's store, and, instead of the step in the sidewalk, altered the grade, when such alteration was unnecessary. The record shows that the municipal authorities fully authorized and ratified the act of the committee, and consequently such act become the act of the municipality itself. Ratifica-

tion is equivalent to previous authority. As said by *Mr. Justice MacRae* in a strong opinion in *Wolf v. Pearson, supra,* "The city had the right to grade the street, and by its subsequent assent it has in effect commanded the act complained of to be done"; and again, "This doctrine of ratification will in some instances apply to torts as well as contracts" (p. 631).

Into the advisability of this change the courts are precluded from inquiring. The public use is the dominant interest, and of this the municipal authorities are the exclusive judges.

As is well said by the Chief Justice in *Small v. Edenton, supra,* p. 527: "If every ordinance were subject for approval upon the verdict of juries, it would be impossible to regulate the streets and sidewalks so as to secure conformity, convenience, protection from fire, proportion and sightliness and other necessary things incident to the growth and development of modern municipalities. These views are distinctly declared in *Tate v. Greensboro.* That authority has often been cited, and we adhere to it."

But we will say in this connection that the advisability of the change finds support in the testimony of both the civil engineers, Ludlow and White. There is no evidence whatever that the change was induced by any hostility to plaintiff or by a wanton purpose to injure him. Nor is there any evidence that the work was negligently or unskillfully done.

The legislative authority to change the grade is ample: "Said commissioners shall have the exclusive power to open, alter or change the streets, alleys and ways of said town, and also their grade." Charter of Henderson, Laws 1889, ch. 241, sec. 62. "The board of commissioners shall provide for keeping in repair the streets and bridges of the town, in such manner and to the extent they may deem best, and may cause such improvements in the town to be made as may be necessary." Revisal, sec. 2930.

There is no constitutional or statutory provision allowing compensation in this class of cases, and in the absence of such we must hold that the injury to the plaintiff is *damnum absque injuria.*

The motion to nonsuit is allowed.

Error.