OLLIE HOYLE ET ALS. v. CITY OF HICKORY.

(Filed 10 December, 1913.)

1. **Cities and Towns — Street Grading — Embankments—Adjoining Owners—Courts—Negligence.**

   Where a town has caused damage to the lands of adjoining owners on a street by filling in the street in the course of grading it, so as to cause an embankment 5 or 6 feet high to be made in front thereof, and it appears that the work was not negligently done and was in accordance with the plans of the town engineer, adopted by the city council, all acting in good faith, under powers conferred by the charter, such damages are not recoverable in an action therefor against the city, for the judgment of the town authorities in such matters is not reviewable by the courts.

2. **Cities and. Towns—Street Grading—Embankment—Trials—Negligence—Evidence.**

   The height of an embankment placed by a town in grading its streets in front of adjoining lots on one of them is not of itself evidence of negligent construction for which damages are recoverable by the owners; and in the absence of further negligence therein, an. instruction which leaves the question of actionable negligence to the determination of the jury is erroneous.

3. **Cities and Towns — Street Grading — Embankments—Retaining Walls—Trials—Evidence—Negligence.**

   Where the owner of lands adjoining a street sues for damages arising from the dirt of an embankment constructed by the city in the grading of the street rolling down upon and damaging his land, and it appears that a retaining wall would have prevented the injury, evidence in •behalf of the city is competent that at the request or instance of the plaintiff, ratified by the proper authorities of the defendant, the latter did not construct the retaining wall which it otherwise would have done.

4. **Cities and Towns—Street Grading—Different Locations—Trials—Evidence—Negligence.**

   In an action by the owner of lands on a city street, brought against the city for the alleged negligent construction on that

street of an embankment to the plaintiff's damages, erected in the grading thereof, evidence of construction at an entirely different place is not evidence of negligent construction at the place complained of.

HOKE, J., did not sit. ALLEN, J., dissents.

APPEAL by defendant from *Cline, J.,* at July Term, 1913, of CATAWBA.

*W. A. Self and C. L. Whitener for plaintiffs.*
*A. S. Whitener for defendant.*

CLARK, C. J. The defendant in grading Ninth Avenue in that city found it necessary to place a fill between 5 and 6 feet high in front of a house, belonging to the plaintiffs, which was located in a depression. There was no condemnation proceedings, as the city did not take any portion of the property belonging to the plaintiffs. This action was brought, alleging that the fill was negligently constructed. The evidence is that the work was executed for the city in accordance with the plans, specifications, and directions of the city engineer. It was not denied that the city acted in good faith in grading the street.

In *Tate v. Greensboro,* 114 N. C., 401, it is said: "As against the lot owner, a city, as trustee of the public use, has an undoubted right, whenever its authorities see fit, to open and fit for use and travel the streets over which the public easement extends to the entire width; and whether it will so open and improve it, or whether it should be opened and improved, is a matter of discretion, to be determined by the public authorities to whom the charge and control of the public interests in and over such easements are committed. With the discretion of the authorities courts cannot ordinarily interfere so long as the easement continues to exist. . . . The public use is a dominant interest, and the public authorities are the exclusive judges when and to what extent the streets shall be improved. Courts can interfere only in cases of fraud and oppression constituting manifest abuse of discretion. It necessarily follows that for the

performance of this discretionary duty by the city officers in a reasonable and prudent manner no action can be maintained against the city."

"Authority to establish grades for streets, and to grade them, involves the right to make changes in the surface of the ground which may injuriously affect the adjacent property owners. But where the power is not exceeded there is no liability, unless created by special constitutional provision or by statute (and then only in the mode and to the extent provided) for the consequence resulting from the powers being exercised and properly carried into execution." 2 Dillon Mun. Corp., sec. 1040, cited and approved in *Dorsey v. Henderson,* 148 N. C., 426.

*Dorsey v. Henderson* also cites with approval from 10 A. and E. (2 Ed.), 1124 ff, as follows: "A change of grade in streets made by a municipality, if made in accordance with the statute, is not such an injury to adjoining property as to require compensation to be made to owners, unless there is a statute rendering the municipality liable therefor." It is further said therein that this citation is based upon cases cited from England, the United States Supreme Court, and twenty-five States, and is recognized especially in *Transportation Co. v. Chicago,* 99 U. S., 635; *Smith v. Washington,* 20 Howard, 135.

Indeed, the whole subject is so fully discussed by *Mr. Justice Brown* in *Dorsey v. Henderson,* 148 N. C., 423, that nothing can be added. In that case it is said that "an abutting owner on a public street cannot recover damages for the diminution of the value of his property caused by the change in the grade of the street in the absence of any negligence in the construction of the work. . . . The law has been so held by this Court in a number of cases, and in such explicit terms that to adopt the plaintiff's theories would be to overrule a long line of well established precedents. The question was first considered in this Court in 1848, and exhaustively discussed by *Judge Pearson,* and the conclusion reached that where a municipal corporation has authority to grade its street it is not liable for consequential damages unless the work was done in an unskillful and incautious manner. *Meares v. Wilmington,* 31 N. C., 73. This

case has been approved and followed in many adjudications of this Court in more recent years. *Salisbury v. R. R.,* 91 N. C., 490; *Wright v. Wilmington,* 92 N. C., 160; *Tate v. Greensboro,* 114 N. C., 397; *Brown v. Electric Co.,* 138 N. C., 537; *Ward v. Commissioners,* 146 N. C., 538; *Small v. Edenton, ib.,* 527; *Jones v. Henderson,* 147 N. C., 120. In *Thomason v. R. R.* the subject is referred to as 'the settled doctrine of this State,' 142 N. C., 307."

In Cooley Const. Lim., 542, it is said that this doctrine is almost universally accepted by the State courts of this country. In *Transportation Co. v. Chicago,* 99 U. S., 635, it is said that the doctrine "rests upon the soundest legal reason," adding: "Acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a 'taking' within the meaning of the constitutional provision. They do not entitle the owner of such property to compensation from the State or its agents, or give him any right of action. This is supported by an immense weight of authority."

There is no constitutional provision or statute which limits the right in this State, and, on the contrary, the defendant has full authority for its action under the provisions of its charter, chapter 242, Pr. Laws 1907. *Dorsey v. Henderson, supra,* was a carefully considered case, and has been cited and approved since. *Crowell v. Monroe,* 152 N. C., 401; *Harper v. Lenoir, ib.,* 726; *Earnhardt v. Commissioners,* 157 N. C., 236.

The plaintiffs were permitted to introduce evidence tending to show that the grade at another place on said Ninth Avenue was different from that opposite their property. The evidence of the three civil engineers, one of them subpœnaed by plaintiffs, was that the grade opposite plaintiffs' property was necessary and proper. The evidence that the grade at another point was different was incompetent. It tended merely to raise another issue, not pertinent to this controversy. The city had the right to grade the street in accordance with the judgment of the civil engineers, subject to the approval of its board of commissioners, in the absence of evidence of oppression, misconduct, or bad faith, of which there was no evidence.

The court also erred in instructing the jury that it was for them to say from the evidence whether or not the construction of the embankment at this point was negligent because of an unnecessary height, because there was no evidence to support this view. If there had been, it should have been submitted to the jury. *Harper v. Lenoir,* 152 N. C., 726. But the mere fact that the height of the embankment was an inconvenience to the plaintiffs and injured the value of their property was not of itself evidence to support the allegation of negligent construction. The jury have neither the skill nor the instruments to enable them to review the work of the engineers, nor have they the experience or the opportunity to examine and criticise the work. There must be evidence of negligence.

The plaintiffs also contended that the work was negligently done because the dirt was permitted to roll down from the embankment upon their lot, covering up part of it and some of it rolling upon their porch. Whether it was negligence not to put in a retaining wall to prevent this might well be submitted to the jury unless the plaintiffs consented to the work being done without this. There was evidence that they objected to a retaining wall being put in, and also that they gave permission that the work should be done without such wall. If so, they cannot complain of the consequences. The court erred in refusing to admit evidence in corroboration of the alleged agreement on the part of the plaintiffs to this effect and the ratification of such agreement by the town authorities.

It was alleged in the complaint that the city cut down an oak tree on the plaintiffs' lot worth $25. This was denied in the answer, and the preponderance of the evidence seems to be that the tree was not cut down by the city, or by its authority, but by a negro with the permission of the plaintiffs. This controversy can scarcely be said to come within the terms of the issues submitted, for it was no part of the grading of the street. But as the case goes back for new trial, a separate issue as to this point can be submitted, if desired.

Our conclusion is that for any inconvenience or damage sustained by the plaintiffs' lot from placing the fill in the street

opposite thereto under the advice and supervision of the civil engineer, whose plans were 'approved by the city authorities acting in good faith, the plaintiffs cannot recover unless the work was done negligently. It is *damnum absque injuria.* The court erred in submitting to the jury the question whether the embankment was not negligently constructed, because unnecessarily high, without evidence to support it; in allowing the jury to consider evidence as to the nature of the grading on another block on said street and in not submitting to the jury for their consideration the evidence of the agreement of the plaintiffs to dispense with the erection of a retaining wall.. If there was no such agreement, the plaintiffs were entitled to have the jury consider the damage, if any, caused by defendant's negligence in not erecting a retaining wall to prevent the dirt from rolling down upon the lot of the plaintiffs.

For the reasons above given, there must be a
New trial.

HOKE, J., did not sit.
ALLEN, J., dissents.