## TOOLE *vs.* NICHOL.

[ASSUMPSIT ON PROMISSORY NOTE.]

1. *Witness; putting under the rule, when not allowed to be cross-examined.*— The defendant's witnesses having been sworn, and put under the rule for examination apart, at the instance of the plaintiff, the plaintiff will not be permitted to cross-examine as defendant's witness, one whom the defendant had declined to call and examine.

Toole v. Nichol.

Appeal from Montgomery City Court.
Tried before Hon. Thos. M. Arrington.

Assumpsit on two promissory notes by R. A. Nichol, sur-
viving partner, against Patrick Toole. The case was tried
at the fall term, 1868, of the city court, the plaintiff recov-
ering judgment against the defendant for $520.29. The
defendant reserved a bill of exceptions on the trial, only a
part of which is necessary to a proper understanding of
points decided in the case, and which is as follows : "When
both parties announced themselves ready for trial, a jury
having been selected by the parties, the jury moved the
court to have their witness sworn and sent out of the room,
so that one could not hear the testimony of another while
testifying, and stated to the court that he wanted all the
witnesses that the defendant expected to introduce, to be
then sworn, and then sent out, to which defendant replied,
that he should require all of plaintiff's witnesses should
also be sworn and sent out, to which plaintiff replied that
he should introduce no witness but himself, and there-
upon, plaintiff was sworn as a witness in his own behalf,
and the defendant, himself, James Toole, his son, and
Phillip O'Dwyer were sworn upon the part of defendant,
and thereupon, and before any testimony was offered, said
James Toole and Phillip O'Dwyer were sent out of the
court room, so that they might not hear the examination
of the other witnesses, and the court refused to require the
parties to the suit to be excluded from the court-room; all
this was done on the motion of the plaintiff to require the
witnesses to be put under the rule, as it was termed."

The bill of exceptions then gives the testimony of the
parties, substantially as follows : Plaintiff, being on the
stand as a witness in his own behalf, swore that the notes
sued on were given by defendant for rent of a house in
the city of Montgomery ; which house and lot, plaintiff
afterwards sold to Phillip O'Dywer and James Toole, com-
prising the firm of O'Dwyer & Toole, for $5,000 Confeder-
ate States treasury-notes, which money was paid by James
Toole ; said O'Dwyer had left, as he said, for Tennessee
when money was paid, but before leaving, had informed

James Toole, in plaintiff's presence, that he had arranged with Josiah Morris to get the $5,000 to make the aforesaid payment; plaintiff also swore that the rent of the house and lot were reasonably worth the amount of said notes; that defendant took possession of said house and lot, and occupied the same, from 1st October, 1862, to about 6th of January, 1863, when said sale was made. On cross-examination, plaintiff swore that he negotiated the trade above spoken of, with James Toole and said O'Dwyer, and with no one else, and positively denied having any negotiation with defendant on subject of sale, or that he made the contract with said defendant for sale of said premises to defendant for $5,000, or that he agreed, in said contract, to surrender upon the notes sued on; that no such thing was spoken of during the negotiation; that he did not know defendant in the negotiation; that in first instance, the deed was made to Patrick Toole, instead of O'Dwyer & Toole, plaintiff thinking that James Toole's name was Patrick, and that the deed was intended for James Toole, and was made by mistake to Patrick Toole; that a few minutes after the money was paid, he saw defendant and " dunned " him on the notes, and defendant refused to pay them; that witness went to James Toole and told him this, and that while they were talking, defendant came in and abused his son for not getting up the notes, and to which James Toole replied that he knew nothing about getting up the notes; that it was the first he had heard of it.

The defendant, Toole, swore that he and plaintiff had some controversy about the payment of the notes sued on; that they were given for rent, as stated, but that plaintiff had misinformed him about the condition of house when contract of rent was made; that house leaked badly, and had caused defendant to lose parts of two hogsheads of sugar; that afterwards defendant rented the house to one Levey, whom he sued for the rent, but was defeated in a recovery on account of the condition of house; that plaintiff proposed to sell for $5,000 Confederate States treasury-notes, and defendant offered to buy at that, provided rent notes were thrown in; that negotiations were going on several days; that plaintiff's proposition was accepted,

finally, at the store of O'Dwyer & Toole, at night, in the presence of James Toole, and that plaintiff and he were " a little merry." Plaintiff then left on boat for Mobile, defendant accompanying him to the boat. While plaintiff was absent, defendant proposed to his son James, and his partner, to take the property at the $5,000, it being a good bargain, and the amount of money being more than defendant could conveniently invest in that way. Plaintiff returned in two weeks, or about that time, and pushed defendant for money; plaintiff then had a deed prepared for him, but under the arrangement with James Toole, a new deed was prepared to Phillip O'Dwyer and James Toole, they having agreed to take the trade off defendant's hands; that the negotiations for the sale of said property were between plaintiff and defendant, and not with O'Dwyer & Toole, and the agreement was that the notes sued on were to be given up; that the morning the $5,000 was paid, plaintiff told him that he wanted things settled, so as to leave on the 11 o'clock boat; that defendant told plaintiff to go to his son's store, and he would be there in a few minutes. Plaintiff and James Toole went to the store, and when defendant had got there, the $5,000 was paid, and notes for rent were not taken up; that plaintiff stated that he did not have the notes with him, and that a good deal more was said about the notes; that plaintiff denied agreeing to give up the notes, and said he would have suit brought on them before he left the city. When the money was paid, O'Dwyer had left for Tennessee, and the arrangement was made between defendant and James Toole, for O'Dwyer & Toole to take the property; that defendant, in conversation about the notes, remarked that if he ever got any rent out of Levey, he would feel bound to pay it over, but that he had never collected any rent from Levey. On cross-examination, defendant stated that the contract was for cash. This was the substance of defendant's testimony.

James Toole, son and witness of defendant, swore that he never had any negotiation with plaintiff about the sale of said property, but that the contract was as stated by his father; that if O'Dwyer had any negotiations with

plaintiff, that he did not know it ; that witness, when his partner had gone to Tennessee, arranged with Morris to get the money, and gave defendant a check on Morris for the $5,000, which was paid.    Directly after the payment, the defendant came in, and asked plaintiff to give up the notes if he had not done so, and that plaintiff replied, that "he would send them up, that he did not have them with him ;" that it was witness' fault that these notes were not taken up ; that he knew of the agreement ; that he was expressly instructed not to pay unless the notes were taken up ; that the first deed was drawn to J. T. Toole and P. O'Dwyer, and that afterwards a new deed was made to J. Toole and P. O'Dwyer.    The witness also gave some testimony about the condition of the house when rented, and about the suit against Levey by witness, P. Toole, and that plaintiff's counsel in this suit, was counsel for Levey in the suit of Toole against Levey.

   " The defendant then rested his defense, and offered no other testimony or witness.    At this stage of the proceedings, and under the circumstances above set forth, and upon no other, the plaintiff insisted that inasmuch as defendant had, under the requisition of the court and the rule as to the examination of the witnesses, as before set forth, caused P. O'Dwyer to be sworn as a witness for defendant, and sent out as before shown, that the plaintiff had the right to call in the said O'Dwyer and put him on the stand as defendant's witness, and to cross-examine him as such, although defendant had not put him on the stand, and declined to do so.    The defendant denied the right thus insisted on by plaintiff, and objected to plaintiff calling said witness, O'Dwyer, as defendant's witness, or putting him on the stand as defendant's witness, or cross-examining him as defendant's witness, and defendant, then and there, announced that he declined to make or use said witness, O'Dwyer, as a witness on the stand for for defendant ; that he had not put him on the stand as a witness, nor asked him a single question, as a witness, nor would he ask or offer to ask him a question.    The truth of this announcement was established to the satisfaction of the court, but upon what hereinbefore appears, and nothing

else, the court overruled the several objections of defendant, and allowed the plaintiff to call in said O'Dwyer, and put him on the stand as a witness for defendant, to cross-examine him as such ; to each of these several rulings, the defendant excepted.   Under the last ruling of the court, excepted to as aforesaid, the defendant insisting on, and reserving his exceptions, the plaintiff put said witness on the stand, as the witness of defendant, and commenced with him, by cross-examining him.   The defendant did not at any time, during the trial, put a single question to the said O'Dwyer, or propound any interrogatory to him."

O'Dwyer testified in substance, as follows : That the first deed he saw had Patrick Toole, and witness' name on it, and that when plaintiff showed the deed to witness, he informed him that witness' partner's name was James Toole, and that the deed was wrong in having Patrick Toole's name instead of James' in it; that soon afterwards witness left for Tennessee, and never saw the deed which was afterwards made out and delivered to his partner, conveying said premises to his firm, under the name of O'Dwyer & Toole, until long after witness' return from Tennessee.   Witness made no negotiation for the house and lot, but just before he left for Tennessee, authorized his partner, on the application of said partner, to act for him in making arrangements to raise the money ; that witness did not make any arrangement to get money ; that his partner was drinking at the time of these transactions ; that the last deed for property was dated on the day of the morning on which witness left for Tennessee.

"When the plaintiff finished his cross-examination of said witness, O'Dwyer, said witness left the stand without any question having been put by defendant.   To this cross-examination the defendant objected, and the defendant also separately and successively objected to each divisible part of the testimony elicited by said cross-examination, but the court overruled each and every one of these objections, and the defendant excepted to each of these rulings and decisions of the court."

The appellant now assigns as error, " each of the rulings

of the court to which the defendant excepted, as shown in the bill of exceptions."

RICE, SEMPLE & GOLDTHWAITE, for appellant.—1. At the instance of the plaintiff, the court enforced the familiar rule, that the witnesses should be examined separately, apart from the hearing of ·the rest, and caused the defendant to furnish the names of the witnesses he expected to examine, and to have them sworn and sent out of court, to remain until called. The plaintiff himself was his only witness, as he announced at the time he applied to the court to enforce the rule.

This rule as to witnesses, it is said, is " a strong test to try the consistency of their account."—7th American edition, 1 Starkie on Ev. 188, 189.

According to all the authorities, when the court orders this rule to be enforced, neither party can, as matter of right, introduce any witness other than those whose names he gives, and who are sworn and put under the rule ; though the court, in its discretion, may permit other witnesses to be introduced by either party.

It is, therefore, of importance to each party, when the court orders this rule to be enforced, that each party should have sworn and put under the rule, not only the witnesses he knows he will be compelled to examine, not only the witnesses he is perfectly willing to trust, but also the witnesses whom he is really unwilling to trust, but to whose testimony he may, in the varying phases of the trial, be forced to resort. The party must do this, to preserve to himself the right to examine this last mentioned kind of witnesses, if he should need them. If he does not do this, then he could not, as matter of right, call and examine them, however much he might find he needed their testimony.

The foregoing views prove this proposition, that swearing a witness under said rule, as a witness whose name is furnished by the defendant, as one he wishes sworn and put under the rule, is very different from swearing a witness and calling him to the stand for examination, by the defendant as his witness.

A defendant does not commit himself by merely putting a witness under the rule, as he does by "calling" a witness; that is, by calling him to the stand for examination.

A defendant does not accredit a witness to any extent, by putting him under the rule; but he accredits him to some extent by calling him to the stand for examination.

There may be some reason for depriving a defendant of the right to impeach a witness who has been called to the stand by him for examination, though he did not actually examine him; and, therefore, for allowing the plaintiff to cross-examine such witness. But there can be no reason for depriving a defendant of the right to impeach a witness who was put under the rule by him, but never called by him for examination, and not only called by him, but relieved by him.

During the progress of a trial, the defendant may discover that a witness put under the rule for him, is wholly unfit to be trusted in the cause; that he is wholly corrupt, or that he has been guilty of ill practices in the matters involved in the cause. Is there any rule which forces this witness upon the defendant, gives the plaintiff the right to call him and cross-examine him as the defendant's witness, and deprives the defendant of the right to cross-examine, or to impeach, such witness?

Both parties cannot possibly have the right to cross-examine such witness, and the right to impeach such witness. The party having the right to cross-examine him, is the party who has the right to impeach him.

Such case is altogether different from the case where a witness was first called by the plaintiff, and cross-examined by the defendant; and afterwards was called by the defendant and cross-examined by the plaintiff.—1 Starkie on Ev. 187.

The case here now presented to the court, is simply this: The plaintiff called for and procured the enforcement of the rule for the witnesses to be sworn and excluded from the court, so as to have each examined apart from the others; he (the plaintiff) had no witness to be sent out under the rule, as he was (as he said) his only witness; the defendant had three witnesses sent out under the rule; after

the plaintiff had testified and closed, the defendant introduced two of the witnesses he had sent out under the rule, and declined to examine or call the third, and closed the defence. Then the plaintiff claimed the right to call this third witness of the defendant, and to cross-examine him as the defendant's witness. This was allowed by the court, and thus the defendant was deprived of the right to cross-examine this third witness, or to impeach him, though he had never called him, but had declined to call him.

Nothing so opposed to reason and justice can be law.— *Ellmaker v. Buckley*, 16 Serg. & Rawle, 77 (Gibson, C. J.)

The defendant, in this case, stands on at least as high ground as he would have occupied if he had actually "called" this third witness by mistake ; and in that case, the plaintiff would have had no right to cross-examine.— *Clifford v. Hunter*, 3 Car. & Payne, 16, (14 Eng. Com. Law Rep. 189).

The following is in the note on page 189 of 14 Eng. Com. Law Rep. : "However, it frequently happens at Guildhall, that counsel will call a witness, but before he is sworn, will tell him he is not wanted ; and in such cases, the person so called is, in point of practice, never cross-examined by the opposite party."—See, also, *Rush v. Smith*, 1 Cr. M. & R. 94.

The plaintiff, in the present case, gained an advantage from the rule which he moved the court to enforce, and the defendant suffered a wrong therefrom, which illustrates the unfitness and injustice of holding the ruling of the court below to be a part of the law of the land. No case found by us holds such a ruling to be good law. The law of the land does not thus put the defendant in the power of the plaintiff.

This rule of examining witnesses apart, was designed for purposes of justice. It cannot be allowed to operate, so as to make a compliance with it work a forfeiture of defendant's right to cross-examine, or to impeach a witness only put under the rule, but never called to the stand by defendant.

Any violation by the primary court of the settled practice, is a reversible error.— *Grady v. Hammond*, 21 Ala. 427.

Toole v. Nichol.

MARTIN & SAYRE, *contra.*—The mode of examining a witness rests, at all times, in the discretion of the court, and is not a subject of review in an appellate court.—1 Stark. Ev. pp. 131, 132, § 19; 1 Redfield, Greenl. § 435.

A witness who has been called and sworn by a party, but not examined, may be cross-examined by the adverse party. 1 Stark. Ev. pp. 121-2, § 18; *ib.* p. 162, § 15; Sharswood's Starkie, 190, 196; 1 Greenl. Ev. §§ 445. 447; 1 Phil. Ev. C. & H. note, 273-4; 2 Cowen & Hill's notes, p. 730, note 510, 274; 1 Phil. Ev. (3 Am. ed.) 228; *Rex v. Brooks*, 2 Starkie, 472; *Moody v. Rowell*, 17 Pick. 490, 468; *Dickinson v. Shea*, 4 Esp. p. 67; *Jackson v. Varick*, 7 Cow. p. 238; 2 Wend, 166, 483; *Philips v. Eamer*, 1 Esp. 357; *Philips v. Amos*, Esp. 909.

The following authorities, quoted by appellant, sustains the position relied on by appellee.—*Clifford v. Hunter*, 14 Eng. Com. Law Rep. 189; *Rush v. Smith*, 1 C. M. & R. R. 94.

The case cited by appellants, from 16 Serg. & Rawles' Reports, does controvert the general, if not uniform, course of decisions on this point; but is not sustained by any authority cited by the judge holding the opposite of the rule of law contended for by appellee; and even this authority doubts the propriety of an exception in such a case.

If, as a rule of practice, it should be held, the cross-examination of the witness called and sworn by the defendant, was not proper; yet the testimony of the witness, as shown in the bill of exceptions, was not prejudicial to appellant, and he can now claim no advantage in the cause, of an irregular practice, from which no injury resulted to him.

NOTE BY REPORTER.—The court, in the opinion first delivered in this case, affirmed the judgment of the court below, citing Starkie on Evidence, pp. 196, 197; Phillips on Evidence, 4 Am. Ed., vol. 2, p. 899. At a subsequent day of the term, a rehearing was granted, and afterwards a second opinion was delivered, and the former one withdrawn. The reporter has set out the evidence in the case at length, because the counsel of the parties strenuously urged "the

peculiar facts presented by the record" in support of their respective arguments.

RICE, SEMPLE & GOLDTHWAITE filed the following argument in support of the petition for re-hearing :

The doctrine which the opinion makes govern this case, has never before been applied to the peculiar facts presented by this record.

The origin of the doctrine asserted in the opinion of the court, seems to be two " hasty decisions of a single judge, in the course of a trial," and founded upon facts entirely distinguishable from these here found.   These two decisions are *Rex v. Brook*, 2 Starkie's cases ; *Phillips v. Eamer*, 1. Espinasse's Cases, 357.

True, the doctrine is found loosely and generally stated in Starkie on Ev., and Phillips on Ev., at the pages cited in the opinions ; but the only pretence of authority set up in these books, is the two cases first above cited.

These two cases, it is believed, are not recognized as law in England ; it is certain, they are utterly overthrown, and have no authority in America.   They are at war with the soundest principles, and are opposed to the dictates of natural justice, in this, if in no other respect, to-wit : That by the doctrine they assert, an advantage in truths is given, and for no adequate reason, to one party over the other. For example, in the present case, the plaintiff insisted on and obtained from the court an order that the witnesses be put under the rule, as it is commonly called.   This order exposed the defendant to the peril of being cut off from examining any person whose name he did not then and there give, and did not have there and then sworn, charged and sent out, by the court.   In order to keep open to himself the privilege of examining any witness, the defendant was compelled, by the course of the plaintiff and the court below, to have the witness called then and there, to be sworn and charged, and sent out by the court under the rule.   And now, after the plaintiff had thus forced the defendant to have a witness sworn, charged and sent out by the court under the rule, and the defendant had declined to call that witness back into court, and to the stand, the

plaintiff claimed of the court below that that court should further force the defendant to treat that witness as his own, and to give to the plaintiff the right to cross-examine him as a witness for defendant. Is it not obvious that this forcing gives, in truth, to the plaintiff, an advantage over the defendant? Courts of justice cannot sanction any practice that so obviously gives either party an advantage over the other.—*Floyd v. Bovard*, 7 Watts & Serg. 76, 77; *Ellmaker v. Buckley*, 16 Serg. & Rawle, 77.

The reasoning of Chief-Justice Gibson, in 6 Watts & Serg., is conclusive against the soundness or justice of any doctrine that would uphold the ruling of the court below in this case. It demonstrates that the certain result of such a doctrine, is to prevent a fair examination and trial, and to give one party the advantage over the other, contrary to the uniform purpose of judicial tribunals.—*Curven v. Connery*, 5 Binney's Rep. 488.

The opposite doctrine (the doctrine contended for by appellant) cannot work any injustice, cannot give any advantage to either party over the other, and does not subject the adverse party to any possible inconvenience or injury. In the language of Chief-Justice Gibson, in 6 Watts & Serg. 77, "It would be better to say that each party should call the witness to serve his turn, and make him his own for the time being, than to entangle the justice of the case in those distinctions with which the English judges have surrounded it."

And all this is sustained in principle by the unanimous opinion of the supreme court of the United States, delivered by Judge Story, in which he affirms the principle to be "now well established, although sometimes lost sight of in our loose practice at trials, that a party has no right to cross-examine any witness except as to facts and circumstances connected with the matters stated in his direct examination."—*The Philadelphia & Trenton R. R. Co. v. Stimpson*, 14 Peters, 461.

In the present case, the right of cross-examination (if any existed) was created by the joint act of the court below, and the party asserting that right; by that joint act,

the defendant was forced to produce and have sworn every person that he had any idea might become material in the progress of the trial ; the defendant did not swear the witness and put him on the stand ; he merely had him sworn to be put under the rule and sent out under the charge of the court. He never called him back ; he never put him on the box or on the stand. It seems clear and just, that the plaintiff did not, by these acts and facts, acquire a right to cross-examine the person never put on the stand or on the box by the defendant.

The bill of exceptions explicitly states that " all this was done on the motion of the plaintiff," and also plainly shows that the plaintiff stated to the court that he wanted all the witnesses that defendant expected to introduce, to be then sworn and then sent out." All this was done " on plaintiff's motion."

It is self-evident that this swearing and sending out of witnesses that defendant " expected to introduce," is not equivalent to an actual introduction of the witnesses, or putting them on the stand, or on the box. It did not commit the defendant to introduce them, but merely gave him, as well as the plaintiff, permission to introduce them as the witnesses of whichever party might actually introduce them.

The following is a sound and just principle, and governs this case :

" The placing a witness under the rule, by the defendant, in obedience to an order obtained by the plaintiff, that the witnesses be put under the rule, does not create for, or give to, the plaintiff the right to introduce and cross-examine the person so put under the rule by defendant, but never called to the stand or box, as a witness, by defendant.

This principle last stated, is not denied any where except in the ruling in the present case ; it is not denied even by the two English cases first above cited. The court below went far beyond these two English cases ; for in neither of them, was the swearing of the witness a swearing in compliance with, and in obedience to, an order of court, obtained by the adverse party, that the witnesses be put under the rule. An affirmance of the ruling of the court below, upon the peculiar facts, goes greatly beyond any de-

cision known, and is believed to be hurtful to the administration of justice fairly.

B. F. SAFFOLD, J.—A rehearing has been had on the judgment of affirmance in this case. A more thorough examination of the question at issue satisfies us that the judgment of the city court should be reversed.

In the case of the *Phil. & Trenton R. R. Co. v. Stimpson*, (14 Peters, 448, 461,) the supreme court of the United States lays down this rule of cross-examination : A party has no right to cross-examine a witness, except as to facts and circumstances connected with the matters stated in his direct examination. If he wishes to examine him as to other matters, he must do so by making the witness his own, and calling him as such in the subsequent progress of the cause. To the like effect are the decisions in *Floyd v. Bovard*, 6 Watts & Serg. 75, and *Ellmaker v. Buckley*, 16 S. & R. 77.

The purpose of a cross-examination is to sift the testimony of a witness, and to try his integrity. When he has not been examined in chief, there can be no necessity for this. In the present case, the defendant's witnesses were put under the rule, for examination apart, at the instance of the plaintiff. The defendant having concluded his evidence, without calling one of the witnesses sworn by him, the court allowed the plaintiff to cross-examine him as the witness of the defendant. In this we think there was error.

The judgment is reversed, and the cause remanded.