JAMES H. PADGETT v. S. ANNIE McKOY.

(Filed 16 December, 1914.)

1. **Deeds and Conveyances—Color—Adverse Possession—Wire Fence—Evidence—Trials—Instructions—Limitations of Actions.**

The plaintiff in this action claims title to the land in dispute by adverse possession under color, and there is evidence on defendant's part that her agent entered upon the land, being on the east side of a certain wire fence, and cut timber therefrom in 1908, and the plaintiff, in response to his request, pointed out the wire fence as the dividing line between the lands. There was also evidence of plaintiff's adverse possession of the land on the east of this fence prior to 1908, sufficient to ripen his title. The court charged the jury, according to defendant's request for special instruction, in substance, that if the plaintiff pointed out the wire fence·as the dividing line "and stated that the lands on the east thereof belonged to defendant, and the wire fence was constructed by permission of the defendant," that would be a recognition of the owner-

ship of the defendant of the lands on the east side of the fence, and the possession of these lands by plaintiff thereafter would not be hostile, etc.: *Held,* it was not error for the court to modify this instruction by charging this would be so unless the plaintiff's title had ripened by adverse possession before 1908; and if it had, occurrences or conversations thereafter had between the parties could·not divest it; and it is *Further held,* that construing the charge as a whole, the principles of law were clearly and correctly charged upon this phase of the controversy and the jury could not have been misled or confused in their deliberations to the defendant's prejudice.

2. **New Trial—Newly Discovered Evidence—Motions.**
   A motion for a new trial for newly discovered evidence is denied. *Johnson v. R. R.,* 163 N. C., 453.

APPEAL by defendant from *Justice, J.,* at February Term, 1914, of BUNCOMBE.

This action involves the title to the land indicated on the diagram filed in the record, by the letters A, D, E, F, G, H, and back to A, they being the yellow lines on the map. The grant of the State to one Cathcart was introduced by the plaintiffs, but they did not connect themselves with it by mesne conveyances, but relied on adverse possession of the land under color, which was a deed from W. B. Smith to their ancestor, James Padgett, dated 18 November, 1882. Defendant also claimed title to the *locus in quo* by adverse possession under color, which con-·sisted of deeds from Rebecca Freeman to A. J. Mangum, dated 10 July, 1884, for the *locus in quo;* a deed from W. B. Smith to A. J. Mangum, dated 12 February, 1883, for the part of the Cathcart land east of the line A, D, and a deed from A. J. Mangum to Mrs. Annie McCoy, dated 14 April, 1885, for the entire Cathcart tract, including the *locus in quo.* Each of the parties offered evidence of possession. There also was evidence that there was a wire fence on the land, extending from the point indicated on the map by the letter E towards the point indicated by the letter G, and a short distance east of the line E, F.

With reference to the fence, the defendant requested the court to· give this instruction to the jury:

"If the jury find from the evidence that in the year 1908 the defendant, through her agent, Ed. Stepp, entered upon the lands in dispute and cut timber therefrom, and if at that time said agent asked the plaintiff to point out to him the line of the defendant, and said plaintiff did point out said line at a ·point west of the wire fence and as claimed by the defendant, and stated that the lands east thereof belonged to the defendant, and the wire fence was constructed by permission of the defendant, then this would be a recognition of the ownership of the defendant, and the possession of the plaintiff thereafter would not be hostile, under claim of right, and .adverse."

The court gave the instruction with the following modification: "This would be so unless the plaintiff obtained his title before 1908. If he had obtained his title before that date, then no language could divest him of it." But the court, after correctly defining adverse possession, also charged the jury, in this connection: "The plaintiff contends that he did not have it cultivated until it was worn out, and then he put it in pasture; that he cultivated and pastured for forty years, and that at the time he was holding it adversely, under his deed, and that it was in his possession under this character of holding. Now, if he did that, seven years would put his title indefeasibly in him. And after he ripened his title, if he did, then no language of his, mere talk, could divest it. And if he had the title in him, it would require a deed to take it out of him, or something as solemn as a deed. Now, it is in evidence, and the defendant claims, that at some time after he built the wire fence, or at the time he was building the wire fence, he got permission from the McKoys to build the wire fence, and at that time he was not claiming the land at all. The plaintiff says that he had ripened his title already, and that for a long time there had been a rail fence; and that he had ripened his title and had a good and indefeasible title at the time that wire fence was put there. If you find that he had ripened his title, then the mere permission would amount to nothing; and if he said that he did not own the land, that would not take the title out of him, if he had it in him. So the question is restricted to the time that this wire fence was built. One inquiry for you to make is, Had he had seven years possession before that time? He claims that he had. The defendant contends that the plaintiff went to him and asked his permission to put a wire fence on his land. He said, 'I did; but I intended at that time to put it (farther) over, but I did not have the money to buy the wire to put it that far.'"

The court again charged the jury fully and correctly as to what would constitute adverse possession sufficient in law to ripen the title of the parties under their color. With reference to the defendant's possession, he told the jury that occasional acts of trespass would not be sufficient for that purpose, but the possession must be notorious and continuous, indicating that the party claimed the land and was using it as owner. He also stated that if the plaintiff had cultivated the land beyond the line E, F, that is, east of it, accidentally or inadvertently and not intending to claim it, but under a mistake as to the true location of it, his possession would not be adverse. There was a verdict for the plaintiff, and from the judgment thereon defendant appealed.

*Mark K. Brown for plaintiff.*

*Garland A. Thomasson, Zebulon Weaver, and Wells & Swain for defendant.*

WALKER, J., after stating the case: The defendant reserved several exceptions to the rulings of the court and the charge, but we are of the opinion that there is but one which we need consider, and that is, whether the court should have modified the instruction which defendant requested and above set forth. We do not understand the defendant's counsel to contend that if the title of the plaintiff had already ripened under their color, that anything said to Ed. Stepp, agent of defendant, after its ripening, as to the fence or the true line dividing their lands, would be evidence against the plaintiff, but his position is that the added words of the judge were calculated to mislead the jury or confuse them as to whether they could consider that evidence in order to ascertain whether the title had vested. We think that the judge was clear enough in his statement, and that the qualification of the instruction was a proper one. It evidently meant that if, before the conversation between the witness, Ed. Stepp, and Padgett, about the fence and the line, the title had ripened by adverse possession—and we do not doubt that there was some evidence of this fact—then the declarations of Padgett, if they were made, would not affect his title, or divest him of it. And this conclusively appears to have been what was meant, if we refer to other parts of the charge which we have quoted, and the matter is left perfectly free from doubt in our minds, and also must have been, as we think, in the minds of the jurors.

We must read the charge as a whole, and construe it in the same way, as we have so often said (*S. v. Exum,* 138 N. C., 599; *Reynolds v. Palmer, ante,* 454); and when thus considered, we do not see how it could have been misunderstood by the jury. The entire charge was a very full and correct exposition of the law "arising upon the evidence." The contention of each party was fairly stated, and defendant has no reasonable ground of complaint. It is manifest, from the evidence and the charge, as they throw light upon the verdict, that the jury have found that plaintiff held the land in adverse possession a sufficient time to ripen his color into a good title, and that defendant had no such possession, having made only occasional entries upon the land. The court gave substantially all of the instructions requested by the defendant to which she was entitled, and we can find no error in the case. The jury have really settled it against the defendant, upon the evidence, and after a correct submission of it to them.

No error.