GLOBE INDEMNITY COMPANY v. SYLVA TANNING COMPANY, CAROLINA DRAY COMPANY, AND GEORGE V. WHITTON.

(Filed 20 February, 1924.)

1. **Appeal and Error—Objections and Exceptions — Presumptions — Verdict—Judgments—Trials.**

    Where appellant has not excepted upon the trial to the court's ruling upon the evidence or to the issues submitted, or to the instructions given, but only to the judgment signed in accordance with the verdict, the Supreme Court on appeal will presume that the trial was free from error and only consider the correctness of the judgment in its relation to the verdict rendered.

2. **Principal and Surety—Contracts—Fraud—Deceit — Suits — Cancellation—Equity.**

    Where a surety on a bond given by it and its principal for the faithful performance of a contract with another, brings suit to set aside the instrument for fraud or deceit, it is not sufficient to show the fraud, but he must also establish the fact that the obligee as well as the principal intended to deceive, and that the fraud induced the plaintiff to execute the bond as surety.

3. **Same—Evidence—Questions for Jury.**

    Where the surety for the faithful performance of a contract seeks to set the bond aside for fraud and deceit practiced upon it on the ground that the representations were made upon the basis that the contract called for a consideration to be paid by the obligee to its principal, and in fact it was for a preëxisting debt, and it was shown that the obligee was unaware of and had not participated in the fraud or deceit alleged; and the evidence is conflicting as to whether the fraud or deceit complained of had induced the plaintiff to execute the bond as surety, or

whether it was induced by the true representations made by the principal of its solvency, and valuable collaterals, etc., received by the plaintiff at the time, the evidence presents an issue of fact for the determination of the jury.

APPEAL by plaintiff from *Lane, J.,* at October Term, 1922, of BUNCOMBE.

Civil action brought by plaintiff against defendants to rescind and cancel a supply contract bond executed by the defendant Carolina Dray Company (hereafter called Dray Company), as principal, and the plaintiff Globe Indemnity Company, a corporation (hereafter called Indemnity Company), as surety. Said bond was payable to the defendant Sylva Tanning Company, a corporation (hereafter called Tanning Company). The defendant George V. Whitton was secretary and treasurer and general manager of the defendant Dray Company, and had complete control and management of its business, and who, on behalf of the corporation, signed the bond which this suit is brought to rescind and cancel.

On 11 November, 1920, the Indemnity Company made the usual bond in such cases to the Tanning Company, whereby it obligated itself as surety for the faithful performance by the Dray Company of its certain contract with the defendant Tanning Company. The obligation of the Dray Company under said contract, as recited in the bond, being: "Whereas the principal has entered into a certain written contract bearing the date 4 November, A. D. 1920, with the obligee, Sylva Tanning Company, Sylva, N. C., to deliver on board at cars at various shipping points on the Southern Railway acid wood, minimum carloads to average $500 worth a month, and to be fulfilled in 13 months to the total of $6,500, which contract is hereby referred to for the purpose of explaining this obligation." The premium charged and received for the bond was $89.75.

The Dray Company, on 5 November, 1920, made an agreement with the Tanning Company. The following is recited in the agreement: "Witnesseth: That for and in consideration of the sum of $6,500, to us this day advanced by the Sylva Tanning Company, Inc., of Sylva, N. C., the receipt of which is hereby acknowledged, the same having been paid to the undersigned Carolina Dray Company, Inc., and for other valuable consideration herein mentioned, we do hereby agree to sell, assign, set over and agree to deliver on board the cars to the Sylva Tanning Company, Inc., of Sylva, N. C., 900 cords of 160 cubit feet each of merchantable chestnut wood suitable for making extract for tanning purposes, same to comply with the specifications of the Sylva Tanning Company, a copy of which specifications is hereto attached and marked Exhibit 'A' and made a part of this contract. Said wood

to be delivered on board the cars in full minimum carloads at various stations on the Southern Railway lines in Western North Carolina, said wood to be delivered on board the cars, as above specified, on or before 1 December, 1921, the same to be delivered in equal monthly quantities of approximately 50 cords per month for shipment to the Sylva Tanning Company, Sylva, N. C., or to such other points as they, their successors or assigns, may herein direct, said wood to be cut and split according to the specifications hereinbefore referred to."

Paragraph 6 of the complaint alleges:

"That, as the plaintiff is informed and believes, the recital in the contract aforesaid of the consideration of 'the sum of $6,500 to us (Carolina Dray Company) this day advanced by the Sylva Tanning Company, of Sylva, N. C.,' was false to the knowledge of both parties to said contract, and was fraudulently introduced into said contract for the purpose and with the design of enabling the said Carolina Dray Company to overreach and defraud the plaintiff, the true facts in reference to said transaction being, as the plaintiff is informed and believes, as follows" (which are set forth in detail).

Paragraph 7 of the complaint alleges:

"That, as plaintiff is informed and believes, the defendant Sylva Tanning Company did not, at or about the time of entering into the aforementioned contract or at any other time, advance to the defendant Carolina Dray Company, or to any other person for it, the sum of $6,500 or any other sum whatsoever, with reference to said contract or the subject-matter thereof; that the true consideration of said contract was not a present advancement, as therein recited, but was a pre-existing and overdue debt of $6,464.42, owing by said Carolina Dray Company or said Whitton to said Sylva Tanning Company, and arising out of antecedent transactions between said parties."

Paragraph 10 of the complaint alleges:

"That all and every of the false and fraudulent representations and pretenses hereinbefore alleged were knowingly and wilfully made by the defendants Carolina Dray Company and George V. Whitton with the calculated purpose and intention of deceiving and defrauding the plaintiff, and they did deceive and defraud the plaintiff, and the plaintiff was thereby induced to accept and assume the risk and hazard of suretyship on the aforementioned bond; and the defendant Sylva Tanning Company, for its own advantage and gain, knowingly connived at and participated in all such the fraudulent conduct and intentions of its codefendants."

Before the contract of indemnity was signed the Dray Company, through its secretary and treasurer, George V. Whitton, was required to sign a supply contract application—usual form of such applica-

tions—giving financial statement of the Dray Company, showing in detail the assets and liabilities, the assets being $17,444 over the liabilities. In this signed statement was "Incumbrance on plant, $6,000; due on truck, $1,500." The Globe Company made a collateral agreement (their form 309, receipt No. 651) with the Dray Company, with the usual provisions. The following is on the agreement: "Received from the depositor named in the within agreement $8,000 in stock of company and *bona fide* sale of 1,000,000 feet of lumber as collateral security subject to all and singular the terms of the within agreement." The collateral agreement says: "Whereas, in consideration of the deposit of collateral security described in the receipt hereto annexed, the surety has executed or procured the execution of, or may hereafter execute or procure the execution of, obligations of guaranty and suretyship on behalf of Sylva Tanning Company."

The Tanning Company, in compliance with the requirements of its bond with the Indemnity Company, gave the monthly notices of the Dray Company not fulfilling its contract.

The Tanning Company, answering paragraph 6 of the complaint, says:

"Answering paragraph 6 of plaintiff's complaint, this defendant says that the consideration of sixty-five hundred dollars therein mentioned was for a good, sufficient and meritorious consideration, and is a true recital of the consideration passing from this defendant to the Carolina Dray Company, and this defendant emphatically denies that there was any fraud, deceit or any connivance on its part in any way whatsoever, and that it made no representations to the plaintiff nor did it endorse any representations made by the Carolina Dray Company.

"Further answering paragraph six this defendant says:

"That it had for some time been purchasing acid wood from the Carolina Dray Company, and that the Carolina Dray Company had received advancements from this defendant to purchase trucks, machines and other equipment in carrying on their wood operations, and had secured this defendant by a bill of sale for certain wood and by chattel mortgages upon its trucks, drays, machines and other equipment, and that as a part of the consideration mentioned in said contract was the release of said mortgage herein referred to in order that the said Carolina Dray Company might be free from indebtedness so that it could raise sufficient funds upon which to operate this wood contract; all other allegations in paragraph six are not within the knowledge of this defendant, and it demands strict proof thereof."

Answering paragraph seven of the complaint, the defendant Tanning Company says:

"Answering paragraph seven of plaintiff's complaint, this defendant, in consideration of the execution of the bond by the plaintiff, released

13—187

and discharged its mortgage and lien against the property of the Carolina Dray Company, which was equivalent to the advancement to it of the said sixty-five hundred dollars, and that it released said property and allowed the Carolina Dray Company to use said machines, drays," etc..

Answering paragraph ten of the complaint, the defendant Tanning. Company says:

"Answering paragraph ten of plaintiff's complaint, this defendant does not know of the intentions of the Carolina Dray Company and George V. Whitton, and has no knowledge or information sufficient to form a belief as to any false representations made by him, and demands strict proof thereof, but this defendant expressly denies every allegation and intimation that this defendant, Sylva Tanning Company, knowingly connived or engaged in any representations whatever, either false or true, made by the defendant Carolina Dray Company and George V. Whitton, and expressly denies any knowledge of any representations made as set out in paragraph ten."

The defendant Tanning Company, further answering, says:

"The Carolina Dray Company, through George V. Whitton, applied to this defendant with the request that they cancel the mortgage upon said property in order that they might operate on a more extensive scale, and as an inducement to this defendant to release and cancel said mortgage, the Carolina Dray Company entered into a contract with this defendant to deliver the quantities of wood, and as a guarantee that it would deliver said wood therein specified, tendered to this defendant the bond as set out, whereupon this defendant did release and cancel said mortgages above referred to, the aggregate amount of which was $6,500; and, as this defendant is informed and believes, said chattel mortgages were amply secured, and that the property described therein was worth considerably more than the indebtedness against said property."

The defendants Carolina Dray Company and George V. Whitton filed no answer to the complaint.

The following judgment was rendered:

"This cause coming on to be heard at the October Term, 1922, of the Superior Court of Buncombe County, before his Honor, Henry P. Lane, judge presiding, and a jury, and the same being heard, and the following issues having been submitted to the jury, to wit:

"1. Was the plaintiff induced to execute the bond of 11 November, 1920, by reason of the false and fraudulent representations of the defendants Carolina Dray Company and George V. Whitton, as alleged in the complaint?

"2. Did the defendant Sylva Tanning Company have knowledge of and participate in such false and fraudulent representations as alleged in the complaint?

"3. What damages, if any, is the plaintiff entitled to recover?

"And the jury having answered the first of said issues 'Yes,' the second 'No,' and the third issue 'Nothing,' it is therefore, on motion, considered and adjudged by the court that the plaintiff take nothing by its said action against the defendant Sylva Tanning Company and that the defendant Sylva Tanning Company be allowed to go without day and recover of the plaintiff its costs in this action incurred, to be taxed by the clerk.

"And it is considered, adjudged and decreed by the court that the bond executed by the plaintiff on 11 November, 1920, and fully described in paragraph five of the plaintiff's complaint, constitutes and is a valid and binding contract and obligation between the parties thereto."

The plaintiff tendered judgment, the material part of which is as follows: "It appearing to the court by the admission in the answer of the defendant Sylva Tanning Company, that the contract of the defendant Carolina Dray Company with said defendant Sylva Tanning Company, recited in the bond set out in the pleadings for the purpose of explaining the obligation of said bond, was upon the consideration and to secure the payment of a preëxisting debt arising on former dealings between the said defendants, and that said contract was not upon the consideration of a present advancement, as recited in said contract."

The court refused to sign the judgment tendered, and plaintiff excepted.

The court signed the judgment as set out in the record, and plaintiff excepted.

The plaintiff, assigned as error the refusal of the court below to sign the judgment tendered by plaintiff and signing the judgment tendered by the Tanning Company, and appealed to this Court.

*Carter, Shuford & Hartshorn and John L. Baker for plaintiff.*

*J. Scroop Styles and Alley & Alley for defendant Sylva Tanning Company.*

CLARKSON, J.   From the record in this case it appears that the issues submitted on the material allegations in the complaint and answer and unobjected to were as follows:

"(1) Was the plaintiff induced to execute the bond of 11 November, 1920, by reason of the false and fraudulent representations of the defendants Carolina Dray Company and George V. Whitton, as alleged in the complaint? To this issue the jury answered 'Yes.'

"(2) Did the defendant Sylva Tanning Company have knowledge of and participate in such false and fraudulent representations, as alleged in the complaint? To this issue the jury answered 'No.'"

In the record there are no exceptions to the court's .charge, no prayer of the plaintiff for any instructions embodying its contention made here, but the only assignment of error is to the tender of judgment by the plaintiff which the court below refused to sign, in which· the following is recited: "That the contract of defendant Carolina Dray Company with said defendant Sylva Tanning Company, recited in the bond set out in the pleadings for the purpose of explaining the obligation of said bond, was upon the consideration and to secure the payment of a preëxisting debt arising on former dealings between said defendants, and that said contract was not upon the consideration of a present advancement, as recited in said contract."

The other assignment of error is to the judgment as signed.

The issues were duly submitted to the jury. The presumption of law from the record is that the court below charged the law correctly bearing on the evidence as testified to by the witnesses at the trial. The verdict of the jury found that the Tanning Company did not have any knowledge of and participate in the false and fraudulent representations made by the Carolina Dray Company and George V. Whitton. No exceptions were taken to anything during the entire course of the trial until after the verdict.

The law presumes that the procedure in the court below was regular. The court should, in its sound discretion and good sense, instruct the jury on all the issues presented by the pleadings and the evidence. *Blake v. Smith,* 163 N. C., 274.

If the plaintiff had any objections to the charge of the court on the contentions he should have called it to the attention of the court. If he desired additional statements, he should have asked for them. He cannot remain silent, take the chance of winning a verdict, and object afterwards. He is too late. Silence seems to give consent. *Sears v. R. R.,* 178 N. C., 287.

The plaintiff now contends, after the verdict, "The obligee (Sylva Tanning Company) admits that the consideration of the contract upon which the bond was written was not a present cash advance of $6,500, as recited in said contract, and as surety believed it to be, but was a preëxisting debt." The record in the case also shows the collateral agreement made by the Dray Company with plaintiff that the written agreement states *"Whereas, in consideration of deposit of collateral described in the receipt hereto annexed,* the surety has executed or procured the execution of, or may hereafter execute or procure the execution of, obligation of guaranty and suretyship on behalf of Sylva Tanning Company."

On the collateral agreement is a receipt from the Dray Company: "*$8,000 in stock of company and bona fide sale of 1,000,000 feet of lumber.*" The record also shows that the Dray Company was required to give a detailed financial statement and it had assets over capital stock of $17,444, and also reference statement to bank it did business with and manufacturer it did business with.

The Tanning Company in its defense says: "The Carolina Dray Company, through George V. Whitton, applied to this defendant with the request that they cancel the mortgage upon said property in order that they might operate on a more extensive scale, and as an inducement to this defendant to release and cancel said mortgage, the Carolina Dray Company entered into a contract with this defendant to deliver the quantities of wood, and as a guarantee that it would deliver said wood therein specified tendered to this defendant the bond set out in the complaint, whereupon this defendant did release and cancel said mortgages above referred to, the aggregate amount of which was $6,500; and as this defendant is informed and believes, said chattel mortgages were amply secured, and the property described therein was worth considerably more than the indebtedness against said property."

When the bond of the plaintiff was given, the Tanning Company canceled mortgages amounting to $6,500.

The Dray Company defaulted on its contract with the Tanning Company and it immediately notified plaintiff. The plaintiff waited some five months before bringing this action. These are succinctly the material facts.

This is an action on the ground of fraud or deceit to cancel and rescind the supply contract bond.

*Brown, J.,* in *Pritchard v. Dailey,* 168 N. C., 332, says: "The material elements of fraud, a commission of which will justify the court in setting aside a contract or other transaction, are well settled. First, there must be a misrepresentation or concealment; second, an intention to deceive, or negligence in uttering falsehoods with the intent to influence the action of others; third, the misrepresentations must be calculated to deceive and must actually deceive; and fourth, the party claiming must have actually relied upon the representations." *Lunn v. Shermer,* 93 N. C., 169; *Bank v. Yelverton,* 185 N. C., 318.

In *Black v. Black,* 110 N. C., 399, *Hoke, J.,* when on the Superior Court bench, in a case of deceit, gave this charge: "That in order to maintain his action it was necessary for plaintiff to establish that the mule was unsound; that defendant falsely and fraudulently asserted it to be sound; and that these false representations induced plaintiff to make the trade. If plaintiff was not, in fact, misled by defendant, but

acted on his own judgment in making the trade, they should find that he was not thereby induced to part with his property." *Merrimon, C. J.,* in sustaining this charge, said: "This plainly implied that the plaintiff could not recover if he took the mule at his own risk, relied and acted upon his own judgment. The evidence was conflicting, presenting two distinct aspects of it—one favorable to the plaintiff; the other to the defendant. The Court referred to it in detail, pointing out its bearing upon the several issues. The charge was intelligent, very fair, sufficiently specific and full, and we are unable to discover any error that entitles the defendant to a new trial."

In *S. v. Moore,* 111 N. C., 672, *Avery, J.,* says: "As well in civil actions, brought to recover of another for losses incurred by false representations, as in criminal prosecutions founded upon the same species of fraud, the burden is on the actor or prosecutor to show not only the false representation, but that a reasonable reliance upon its truth induced the plaintiff or prosecutor to part with his money or property, the only difference being as to the *quantum* of proof." *S. v. Davis,* 150 N. C., 853.

Admitting that there was no cash advance of $6,500, but it was a pre-existing debt, did this false representation induce plaintiff to make the supply contract bond? Did plaintiff actually rely on the representations, or did it rely on the information it had obtained of the Dray Company's financial statement—*collateral*—as its collateral agreement says, signed by it, "Whereas, in consideration of the deposit of collateral security in the receipt hereto annexed," etc., the collateral being $8,000 in stock of company and *bona fide* sale of 1,000,000 feet of lumber? This collateral may have turned out afterwards to be of small value. Was this not a question for the jury on all the evidence? We think it was.

*Nash, J.,* in *Stafford v. Newsom,* 31 N. C., 510, says: "The action for deceit rests in the intention with which a representation is made, or a fact not mentioned. It was not sufficient that the representation made should be calculated to mislead—for that may be done by the most honest communication—but the representation must be made with the intent to deceive. Moral turpitude is necessary to charge a defendant in an action for a deceit."

In *Magee and others v. Manhattan Life Ins. Co.,* 92 U. S., p. 93, the facts are: "In a suit by a company organized under the law of the State of New York against citizens of the State of Alabama, on a bond conditioned for the faithful performance of duty, and the payment of money received for it, executed by the agent of the company who transacted business as such in the city of Mobile, where he resided, and by them as his sureties, the latter pleaded that the company, as a condition

upon which it would retain in its employment the agent then largely indebted to it, required such bond, and also his agreement to apply all his commissions thereafter earned to his former indebtedness to it; that the agreement was made, and the commissions were so applied; that the company knew that the agent had no property, and depended upon his future acquisitions for the support of himself and family; that the defendants were ignorant of such indebtedness and agreement; that, had they been informed thereof, they would not have executed the bond; that the agreement as to the commissions and its performance were a fraud on them; and that the bond as to them was thereby avoided." *Mr. Justice Swayne,* on p. 98, says: "A surety is a 'favored debtor.' His rights are zealously guarded, both at law and in equity. The slightest fraud on the part of the creditor, touching the contract, annuls it. Any alteration after it is made, though beneficial to the surety, has the same effect. His contract, exactly as made, is the measure of his liability; and if the case against him be not clearly within it, he is entitled to go acquit. *Ludlow v. Symonds,* 2 Caine's Cas., 1; *Miller v. Stewart,* 9 Wheat., 681. But there is a duty incumbent on him. He must not rest supine, close his eyes and fail to seek important information within his reach. If he does this, and a loss occurs, he cannot, in the absence of fraud on the part of the creditor, set up as a defense facts then first learned which he ought to have known and considered before entering into the contract. Kerr on Fraud and Mistake, 96."

The many cases cited in the briefs of counsel on both sides have been carefully considered. We cannot sustain plaintiffs' assignments of error. We think the court below was correct in the judgment rendered. The question was one of fact for the jury.

From the record we can find no prejudicial or reversible error.

No error.