Proceedings instituted before the clerk to assess damages in favor of the petitioner on account of the taking of petitioner's property for a State highway, and damages to other property not taken. From a judgment on a jury verdict in favor of respondent, petitioner appeals. No error.
The petitioner is the owner of certain properties situated on Rocky River in the counties of Stanly and Anson. On this property is situated a roller mill and mills, for meal, feed and other grain products, operated by water power supplied by dams across Rocky River. At the point where the mills are situated there is an island in the river extending above and below the mills. The old highway leading from Salisbury to Cheraw crosses Rocky River at the place where the mills are situated. About half a mile south of the mills and at the lower point of the island the petitioner also owned and operated a ferry, as well as a low-water toll-bridge. This ferry had been owned and operated by the petitioner, and those under whom it claims, for a long time. The ferry was used in case of high water when vehicles could not ford the river at *Page 694 
the mills. Petitioner had also certain right of ways over which it maintained roads leading from the old Salisbury and Cheraw highway at the mills to the ferry, on each side of the river. When the river was up, travel would leave the regular highway and go by petitioner's private roads to the ferry and cross the river and then by another private road of the petitioner, back to the highway. An island in Rocky River, immediately below the ferry, left only a narrow opening between the two islands through which the ferry was operated. When the river was low, it could be forded with wagons and buggies at the mills and the ferry would not be operated on account of the shoals in the river. When automobiles came into use they could not ford the river in as deep water as wagons and buggies, and, usually, when they could not across the river on the ferry, because of shallow water, there was enough water to prevent them from fording the river. This condition caused the petitioner to erect a low-water bridge at the ferry site, using, on both sides of the river, the same entrance to the bridge and the ferry. This was a narrow pass-way, some 20 or 30 feet wide, leading from the high land to the water's edge. Low vehicles could cross on the low-water bridge, when the water was low, but when it rose and was over the bridge, they used the ferry. Petitioner offered evidence tending to show that by these two methods it was able to take care of the travel practically all the time, so that in time of both high and low water, the travel must needs go by the petitioner's mills. This gave the petitioner's mills must advertisement. Petitioner kept and successfully served a large volume of trade. The petitioner did not own any land at the ferry, except the right of ways and privileges of maintaining and operating the ferry. On the Stanly side of the river, petitioner's private road passed from the mill on beyond the ferry into the lower section of Stanly County whence came a great volume of patronage to the petitioner's mill.
Petitioner contends that, in 1921 the State Highway Commission decided to build a highway bridge across Rocky River between the counties of Anson and Stanly, and that its engineers located this highway bridge on the site of petitioner's ferry and low-water bridge, and that the State Highway Commission did not attempt to buy or condemn the location, but proceeded to build its bridge and complete it and open it for travel 22 May, 1923. Petitioner further contends that, in building this bridge and its approaches, the respondent cut off the road leading from petitioner's mill to the ferry and into the lower part of Stanly County; that where the bridge crosses the road a fill 23 1/2 feet high was made, and that the fill and piers leading from the road to the river occupied petitioner's right of way which went to the ferry and bridge; that on the Anson side the respondent constructed a pier in petitioner's road as it led *Page 695 
from the river to the high land; that respondent utilized or rendered useless all the property petitioner had at that location, cutting off its roads that led to the low-water bridge on both sides and made it impossible on the Stanly side to get from the highway bridge down to the road leading from the bridge to the mill, and made it impossible for its customers coming from the lower part of the county to the mill to use the old road. It was further contended that the customers coming from the lower part of Stanly County were thus required to make a wide detour, several miles further than the original way of travel, and those from Anson County that crossed on the highway bridge had to go a mile or more by the new roads into Stanly County and then turn to the mill.
The petitioner claims damages for the taking of its property and property rights and for the damages resulting to its property not so taken.
The defendant contended that, while the petitioner owned the property and rights alleged in the petition, it did not locate its highway bridge on the identical site of the low-water bridge and ferry and that the petitioner used its ferry up to and including the day on which the highway was opened for travel and that petitioner was not damaged, for that the general and special benefits accruing to petitioner from the building of the highway were more than sufficient to offset any damages claimed, and that the real claim of petitioner was not for compensation for taking property and not for damages directly resulting to other property, but was an effort to obtain reimbursement for the inevitable result flowing from the building of a modern dependable highway, including a concrete bridge across Rocky River, so constructed that its floods would not interfere with the travel, but interfered with what defendant terms, "petitioner's private monopoly,"which it had enjoyed on account of the lack of transportation facilities by which compensation with it could function.
The verdict was as follows:
"1. What damage, if any, is the petitioner entitled to recover of the defendant by reason of the appropriation of a portion of the land of the petitioner by the defendant for the use of the State highway and bridge described in the petition? Answer: Not any.
"2. What benefit either general or special, or both, if any, has accrued to the lands of the petitioner by reason of the construction of the State highway and bridge described in the petition? Answer: Nothing."
There was no exception to the issues submitted.
The petitioner assigns error (1, 2, 3) in permitting counsel for respondent to ask the witness Hathcock, president of petitioner, certain questions as to what, in his opinion, would have been petitioner's damages if the State highway bridge had been built below petitioner's ferry. The witness answered that he did not think the ferry would be worth much if a free way to cross had been provided. The same kind of evidence was elicited on redirect examination. This witness had previously given his opinion as to the damages suffered by petitioner on account of the building of the bridge. The same kind of evidence was elicited from petitioner's witness, Freeman, and petitioner objected. The damages sought was for the taking of property, but the evidence for petitioner on direct examination tended to show that the value of the property taken, and the resultant damages to its other property was considerable because the highway bridge rendered it inaccessible to the trade, and reduced its value seriously.
It was not a question of what the State Highway Commission might have done, or how much petitioner would have been damaged under other circumstances, but it was a question of damages, certain, definite, not remote, and compensation for property, and property rights taken. The office of cross-examination is to sift, and test, and purge from the adversary's witnesses the elements composing their estimates of damages.
The questions were competent on cross-examination. They show a skillful appreciation and use of the advocate's valuable art of cross-examination.
The right to have an opportunity for a fair and full cross-examination of a witness upon every phase of his examination-in-chief, is an absolute right and not a mere privilege. S. v. Hightower, 187 N.C. 300, 310;Mining Co. v. Mining Co., 129 Fed., 668. Cross-examination "beats and boults out the truth much better than when the witness only delivers a formal series of his knowledge without being interrogated." (Sir MatthewHale, L. C. J. History of the Common Law, ch. 12.) In S. v. Morris,84 N.C. 764 (1881), Ruffin, J., says: "All trials proceed upon the idea that some confidence is due to human testimony, and that this confidence grows and becomes more steadfast in proportion as the witness has been subjected to a close and searching cross-examination; and this because it is supposed that such an examination will expose any fallacy that may exist in the statement of the witness, or any bias that might operate to make him conceal the truth; and trials are appreciated in proportion as they furnish the opportunities for such critical examination." The questioning was also proper to elicit whether the witnesses had any bias. Wigmore on Evidence, (2 ed.), par. 1367 and note; Lockhart's Handbook on Evidence, sec. 270; Toole v. Michael, 43 Ala. 406,419. *Page 697 
In Rice v. R. R., 167 N.C. 1, the court allowed the question: "If you clean the sewer out, will it drain the land?" There was evidence that the drain pipes had been allowed to clog up, and that damages resulted therefrom. It was allowed as tending to fix the cause of the damage. In the case at bar the converse was clearly competent.
The petitioner in its fourth assignment of error complains at the charge to the jury in the following excerpt: "That plaintiff's charter as a ferryman was granted to, held and exercised by, the plaintiff, subject to the inherent right of the State to erect a public bridge across Rocky River at any time and place it might desire, regardless of the effect it might have on the tolls and emoluments received by the plaintiff from said ferry and toll bridge."
It is contended that the words "at any time and place," in its connection, led the jury to believe that the State Highway Commission could take petitioner's property without compensation.
The charge must be considered contextually and not disjointedly. In reCreecy, ante, 306; Davis v. Long, 189 N.C. 129, 133; Mangum v. R. R.,188 N.C. 689, 701; Cobia v. R. R., 188 N.C. 487, 493; Exum v. Lynch,188 N.C. 392; In re Hardee, 187 N.C. 381; S. v. Dill,184 N.C. 645, 650; S. v. Jenkins, 182 N.C. 818, 820; S. v. Jones,182 N.C. 781, 787; White v. Hines, 182 N.C. 275, 289; S. v. Chamber,180 N.C. 705, 708; Haggard v. Mitchell, 180 N.C. 255, 258; In re Hinton,180 N.C. 206, 214; S. v. Wilson, 176 N.C. 751, 754; Lumber Co. v. LumberCo., 176 N.C. 500, 503; Taylor v. Power Co., 174 N.C. 583, 588; Leggett v.R. R., 173 N.C. 698, 699; Kistler v. R. R., 171 N.C. 577, 579; Deligny v.Furniture Co., 170 N.C. 189, 203; Montgomery v. R. R., 169 N.C. 249;Padgett v. McKoy, 167 N.C. 504, 507; McNeill v. R. R., 167 N.C. 390, 395;S. v. Robertson, 166 N.C. 365; S. v. Ray, 166 N.C. 420, 434; Hodges v.Wilson, 165 N.C. 333; Bird v. Lumber Co., 163 N.C. 162, 167; S. v. Vann,162 N.C. 541; S. v. Tate, 161 N.C. 280; S. v. Exum,138 N.C. 599; S. v. Lewis, 154 N.C. 632, 634; Kornegay v. R. R.,154 N.C. 389, 392; 2 Thompson on Trials, sec. 2407.
Measured by this rule or by the language itself, the charge could not have any prejudicial effect. Petitioner does not challenge the correctness of the proposition of law contained in the excerpt, but fears that the reference to the right of the State to exercise its sovereignty through the respondent at any time and place, might have prejudiced it. The charge is clear and full as to damages, expressly stating that the petitioner was entitled to the fair market value of the property taken and to all the damages flowing proximately and directly to its other property from such taking. *Page 698 
In the light of the careful and painstaking explanation of the plaintiff's right to recover damages, which appears in the charge, no possible prejudice could have resulted in this regard to the petitioner.
In petitioner's fifth assignment of error, the petitioner complains because the court, in giving to the jury the measure of damages to the property not taken, limited the measure to the impairment in value flowing directly and proximately to the plaintiff's property by the reason of the taking for the construction of a bridge and highway at the point where it was constructed. The respondent in locating its road did not touch the 25 acres of land comprising the petitioner's mill site. Its location was some 1500 feet from it. The witness Hathcock, petitioner's president, testified in specifying his damages by way of depreciation of property not taken, says that it was caused by the fact that the highway was built leaving petitioner's mill property remote from it — no way to get out without greatly increased distance — puts petitioner's patronage in closer touch with its competitors who are on the highway. The highway provided a shorter way of travel somewhere else and a longer way to petitioner's mill. If the highway had been located right by petitioner's mill, it would have been a fine advertisement for it. Petitioner had been deprived of the public road; its income taken; the distance for its travel to go in and out increased, as well as the difficulty. "There is no other damage done to the mill property, except the fact that it was left off of the new road, that I think of right now."
In the light of these contentions and the evidence relating thereto, it was necessary for the court to charge the jury so that they could separate the damages, if any, resulting to petitioner's property rights and its damages claimed which are the necessary results of the changing conditions in business life. In Elks v. Comrs., 179 N.C. 241, the Court, throughClark, C. J., affirming Lanier v. Greenville, 174 N.C. 313, says: "We have adhered to the rule that, in the assessment of damages for land taken for public improvement, the measure of damage is the difference in value before and after taking." Anent a similar contention in that case, the Court approving the instruction directing the jury not to take into consideration the fact that plaintiff's home is off the road, because the action was not brought by reason of the house being cut off of the road, but by reason of taking a portion of his land through which the road passes, says: "The plaintiff still has the old county road to use as he did previously to laying out this road, except that he himself has built a tobacco barn across it, as shown on the map, and in that respect he can recover no damage by reason of laying out of the new road. If he could, then any other person living 4 or 5 miles, or farther, from the new road, could contend that they were entitled to damages because the new road was not constructed by their home." *Page 699 
There is ample authority given by the pertinent statutes, which are: Public Laws 1921, chap. 2 (including C. S., chap. 33, Eminent Domain); Public Laws, Extra Session, 1921, chap. 7; Public Laws 1923, chaps. 160, 247, 263; Public Laws, Extra Session, 1924, chap. 16; Public Laws 1925, chap. 45 and 133. When such authority is used with due care and diligence in its performance, the respondent is not responsible for purely consequential damages, such as contended for by the petitioner in the deflection of its patronage and depriving it of a highway by its mill door, and the increase in its distance, from a dependable all-weather, hard-surfaced road and modern bridge, free and without tolls. Dorsey v.Henderson, 148 N.C. 423; Hoyle v. Hickory, 164 N.C. 79; Wood v. LandCo., 165 N.C. 367; Munday v. Newton, 167 N.C. 656.
We conceive the charge in its entirety to comply with the rule laid down in R. R. v. Armfield, 167 N.C. 465; R. R. v. McLean, 158 N.C. 498;Lambeth v. Power Co., 152 N.C. 371; Abernathy v. R. R., 150 N.C. 97;Brown v. Power Co., 140 N.C. 333; Lloyd v. Vendable, 168 N.C. 531, and in R. R. v. Mfg. Co., 169 N.C. 156, as applying to the instant case. The charge of the court meets the rules laid down in these well-considered cases, in so far as the facts are similar. The test is the effect of the taking on the value of the property connected with the property taken. It is pecuniary and not sentimental, problematical or uncertain, and does not include the income dependent upon the trade or custom of a flour mill; but in so far as these elements affect and diminish the value of the property as a direct and proximate result of the taking, they are competent, and the charge of the court below so allowed the jury to apply the evidence, if accepted by it.
Petitioner assigns error for that the court failed to instruct the jury on certain incidental phases of the evidence, such as the nature and value of the franchise and easements owned by petitioner, and taken by respondent, and as to the necessity of the effort to agree with the owner. These questions were incidental and not such as to come within the duty of the Court under C. S., 564. The law applicable to the determinative contentions arising upon the evidence has been given (Richardson v. CottonMills, 189 N.C. 655; S. v. Thomas, 184 N.C. 757), and the careful and painstaking effort of the learned trial judge to comply with his duty in the instant case, is such as not to cause prejudice to petitioner's rights by any omission of material matter necessary for a comprehensive understanding by the jury of the principles laid down for their guidance, and meets fully the requirement in Butler v. Mfg. Co., 182 N.C. 547; RealEstate Co. v. Moser, 175 N.C. 259; Jarrett v. Trunk Co., 144 N.C. 299;Rook v. Horton, ante, 184. *Page 700 
If the petitioner desired further instructions, or a particular phase of the testimony or contentions to be presented to the jury, or more fully explained to them, it was its duty to submit special prayers for instructions to the desired effect. Trust Co. v. Yelverton, 185 N.C. 314;Indemnity Co. v. Tanning Co., 187 N.C. 190; Construction Co. v. R. R.,185 N.C. 43; Currie v. Malloy, 185 N.C. 206.
We can perceive in the charge and in the conduct of the trial, no prejudicial error. Therefore, let it be certified that there is
No error.